648

### DENMAN et al. v. MOTTER, Collector of Internal Revenue.
### No. 1121.

District Court, D. Kansas, Second Division.
Sept. 9, 1930.

Banks, O'Brien & McVey, of Independence, Kan., for plaintiffs.

J. W. Hussey, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., S. M. Brewster, U. S. Atty., and L. E. Wyman, Asst. U. S. Atty., both of Topeka, Kan., for defendant.

HOPKINS, District Judge.

This is an action at law (jury waived) against the collector of internal revenue to recover $51,824.38, alleged to have been erroneously collected from the plaintiffs (a partnership) as excess profits tax for the calendar year 1917. The plaintiffs' chief contention is that the running of the applicable statute of limitations had operated to bar collection previous to the time the amount involved was collected (April 1, 1924).

Two questions are presented.

(1) Did plaintiffs file the excess profits tax return as claimed by them? and (2) Was such a return (not being on government's printed blank form 1102) sufficient to start the running of the statute of limitations? .

The facts were substantially these: The plaintiffs, Denman Bros., a copartnership, during the year 1917 and prior thereto, were carrying on a business of drilling and developing oil and gas leases at Sedan, Kan., and vicinity, and in that year employed the firm of Marwick, Mitchell Peat & Co., certified public accountants, to audit their books and make out their partnership income tax return (form 1065) and also their excess-profits tax return (form 1102). This firm of accountants made a complete audit of plaintiffs' books from the beginning of the business for the purpose of making such returns. They prepared the income and excess profits tax return for the year 1917. Both the plaintiffs and said accountants made an earnest and diligent effort to secure form 1102 from the collector of internal revenue and from other sources, but.were unable to do so. Form 1102 was not available to them before the time for filing the said return as limited by the government (April 1, 1918). Said accountants, following instruction 5 on form 1065 and the requirements of the statute, made up an excess profits return on plain paper (Exhibits H and I), and captioned it "Denman Brothers Federal Income and War-Excess-Profits Return."

On this substitute excess profits return, Exhibits H and I, said accountants placed all the information and figures in their possession required by the government's printed blank form 1102,- under the main Schedules 1, 2, 3, and 4, as listed on page 1 thereof. Said exhibits H and I were signed by John Denman, Jr., and by Arthur G. Denman on March 15, 1918, and were on the same day pinned and attached to the partnership's income return, form 1065, and still remained attached to said form when it was signed and sworn to by Arthur G. Denman (member partner) on March 27, 1918, before H. W. Loomis, notary public.

The plaintiffs' said income return, form 1065, and said excess profits return, Exhibits H and I, were attached and pinned to said return, form 1065, were mailed by registered mail to the collector, and were received and filed in the collector's office in Wichita, Kan., on March 28, 1918.

On March 26, 1923, Denman Bros. received an assessment notice from the collector, H. H. Motter, dated March 24, 1923, assessing them in the amount of $229,774.37, and giving plaintiffs 10 days in which to pay the tax or until April 4, 1923. This was a jeopardy assessment, and did not give plaintiffs the usual 30 days' notice as allowed taxpayers under section 250(d) of the Revenue Act of 1921 (42 Stat. 265). Plaintiffs on April 2, 1923, filed their claim in abatement in the amount of said assessment. Subsequently refunds were allowed which reduced the tax to $48,967.70, which, plus interest paid thereon of $2,856.68, totaled $51,824.-38, which sum with interest at 6 per cent. from date of payment plaintiffs seek recovery. Except in so far as they conform to the foregoing, requested findings of the respective parties are denied.

The defendant contends there is no proof that Exhibits H and I reached his office. He cites and relies upon the rule announced in McDonald Coal Co. v. Lewellyn (D. C.) 9 F.(2d) 994, 995, that proof of mailing is insufficient to establish filing, and that strict proof of the receipt of a document is necessary. I am of the opinion the rule relied upon is not applicable here. There, the document was mailed in the post office, and nothing more heard of it. Here, it was not only mailed, but was registered, and a receipt acknowledging the receipt of the letter from the collector was received by the plaintiffs.

In the opinion in the cited case it was said: "The act imposes upon the taxpayer the duty of seeing that his waiver actually reaches the proper office for filing. That responsibility is his, and the burden rests upon him actually to convey the waiver to the Commissioner's office."

The plaintiffs in the instant case bring themselves within the rule by positive proof that the letter was received by the revenue collector. As to whether or not the excess profits tax report was attached to the letter, there is evidence of Loomis (clerk for plaintiffs), who testified that he remembered positively that Exhibits H and I were attached to form 1065 when he sent it to the collector's office. C. H. Douglass, witness for the defendant, testified that it was possible that such papers as Exhibits H and I might become misplaced and lost by clerks in the bureau, that at the time they were sent the office was very busy, and that they might easily be mislaid. From all of which it is not unreasonable to find that Exhibits H and I were received by the revenue collector.

Were these exhibits sufficient to start the running of the statute of limitations? They were captioned "Denman Brothers Federal Income and War-Excess-Profits Return," and on them was placed all the information that they thought was required to enable the commissioner to figure the excess profits tax. The plaintiffs made an honest endeavor to comply with the rules and regulations; they made a return that they thought was a full compliance with the law, and Exhibits H and I, in my opinion, are a complete return, in that they gave the government the same information it would have received if it had been sent on form 1102.

In U. S. v. Mabel Elevator Co. (D. C.) 17 F.(2d) 109, 110, Judge Sanborn says: "It comes down to the question as to whether, when a taxpayer makes an honest return, which he believes to be in compliance with the law, the government can assess a deficiency against him after the expiration of 5 years, on the ground that it was not in strict compliance with the law. This question, it seems to me, must be answered in the negative, as it was answered by the United States Board of Tax Appeals, whose decision is reported in 2 B. T. A. 517. Otherwise, there would practically be no period of limitation whatsoever, and every man who made an inaccurate return could have a deficiency assessed against him at any time, because an inaccurate return is not a return made strictly in compliance with the law."

In White, Collector, v. Hood Rubber Co. (C. C. A.) 33 F.(2d) 739, 742, the court said: "The law clearly contemplates, so far as the starting of the statute of limitation is concerned, but one return. That return may not be complete in all particulars. It may be the subject of amendment; but if it is presented bona fide, and is a return for any purpose under the statute, then it must be a sufficient return to start the running of the statute."

I conclude:

(1) That plaintiff's return as filed (Exhibits H and I) was sufficient to constitute an honest, substantial excess profits return, and sufficient to start the statute of limitations running from the date of filing, for the calendar year 1917.

(2) That the statute of limitations began to run against the defendant for the collection of the tax on March 28, 1918, and expired on March 27, 1923.

(3) That the collection made by defendant from plaintiffs on April 1, 1924, and

paid by plaintiffs under protest, was untimely made and illegally collected.

(4) That plaintiffs filed a proper and sufficient claim for refund on March 29, 1928, which claim was by defendant rejected on March 12, 1929.

(5) That plaintiffs are entitled to recover of defendant the amount of $51,824.38, with interest at 6 per cent. from day of payment, to wit, April 1, 1924, and the costs of this action.