**LANE–WELLS CO. et al. v. COMMISSION-
ER OF INTERNAL REVENUE.**

No. 10183.

Circuit Court of Appeals, Ninth Circuit.

March 22, 1943.

Raphael Dechter and Harry A. Pines, both of Los Angeles, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Samuel H. Levy, and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, HANEY, and HEA-LY, Circuit Judges.

The opinion filed in this case on February 10, 1943, is hereby withdrawn, and the following substituted therefor:

DENMAN, Circuit Judge.

The petitioning corporations seek a review of a decision of the United States Board of Tax Appeals, now Tax Court of the United States, sustaining respondent's determination of deficiencies and penalties on income surtax for the tax years 1934, 1935 and 1936 under the personal holding company income tax provisions of the Revenue Acts of 1934 and 1936.

On June 1, 1939, the Commissioner of Internal Revenue mailed to the Technicraft Engineering Corporation, transferor, and Lane-Wells Company (a Delaware corporation), transferee, respectively, notices asserting various tax deficiencies, including deficiencies in personal holding company surtax income and 25 per cent penalties for failure to file personal holding company returns for the three tax years in question.

Both the transferor and the transferee duly filed petitions for review, upon which the Board entered its decisions against both sustaining the deficiencies and penalties.

The cases are brought to this court by petitions for review filed by the transferor and transferee. Pursuant to stipulation of the parties, this court ordered consolidation of the two appeals.

Petitioner Lane-Wells Company was formed in 1937 to take over the business of petitioner Technicraft Engineering Corporation and its affiliated companies. In 1937, following a reorganization in which Lane-Wells Company of Delaware acquired the stock of Technicraft, the latter conveyed all its assets to the Delaware Corporation and was dissolved.

A. *The validity of the returns as affecting* the time limiting statutes and penalties.

The Board found that Technicraft, in good faith, claimed in its returns that it was not a personal holding company. It found further that the returns, filed in due time, showed all the facts necessary for the respondent to compute the taxes as a personal holding company obligation.[1]

However, the incomes were returned on Form 1120 for taxing corporations not holding companies, instead of Form 1120H for taxing holding company corporations. The Commissioner, upheld by the Board, drew the legal conclusion that such a return was "no return" whatsoever, and hence he was entitled to determine deficiencies thereon at any time,—here in 1939, over four years after the 1934 return and over three years after the 1935 return were filed. It is not questioned that the 1936 return was assessed within the statutory time limit. The Commissioner also determined penalties of 25 per cent for each year on the theory that Technicraft had failed to file any returns, and the penalties were upheld by the Board.

■ We do not agree that the returns are to be deemed not made. They started the running of the time for assessment.

Construing analogous statutes of limitation, the Supreme Court holds that where one kind of income taxpayer in good faith files a return on a form provided for another kind of income taxpayer, which return discloses the facts upon which the Commissioner may compute the income tax actually due from the taxpayer, the return filed is a return which starts the running of the time within which the Commissioner may assess the tax. Germantown Trust Company, Trustee, v. Commissioner, 309 U.S. 304, 307, 310, 60 S.Ct. 566, 84 L. Ed. 770. The pertinent language of the Supreme Court and the cases cited showing the principle to be long recognized are (309 U.S. at page 310, 60 S.Ct. at page 569, 84 L.Ed. 770): "It cannot be said that the petitioner, whether treated as a corporation or not, made no return of the tax imposed by the statute. Its return may have been incomplete in that it failed to compute a tax, but this defect falls short of rendering it no return whatever. Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 180, 55 S.Ct. 127, 130, 79 L.Ed. 264; Commissioner v. Stetson & Ellison Co., 3 Cir., 43 F.2d 553; United States v. Tillinghast, 1 Cir., 69 F. 2d 718; Appeal of Mabel Elevator Co., 2 B.T.A. 517; Abraham Werbelovsky v. Commissioner, 8 B.T.A. 442, 446; Estate of F. M. Stearns v. Commissioner, 16 B.T.A. 889; J. R. Brewer v. Commissioner, 17 B. T. A. 704." See, also, Denman v. Motter, D.C.Kan.1930, 44 F.2d 648, where no form available and return made on plain paper.

We are unable to see any difference in principle between the Germantown decision and the instant case, where one of the class of income taxpayers called "holding companies" files, in good faith, a return on a form provided for companies not holding companies which discloses the facts neces-

---

[1] The finding is: "4. * * * Taxpayer's income and excess profits tax returns filed on Form 1120 made a full disclosure of its gross income and deductions and its resulting net income. * * *."

sary to compute the tax due from the holding company.

The Board attempts to distinguish the Germantown case on the ground that though both forms 1120 and 1120H are for income taxpayers under the income tax provisions of the Act of 1934, taxpayer used Form 1120 under a tax imposed on it under Title I of the Act, 26 U.S.C.A. Int.Rev.Acts, page 659 et seq. while taxpayer should have used Form 1120H under a tax imposed by Title IA, 26 U.S.C.A. Int.Rev.Acts, page 757 et seq. The attempted distinction is that the tax under Title I is a "separate and distinct tax" from the tax under Title IA. The distinguishing is not sound. In the Germantown case the fiduciary return on Form 1041 returns income which is for computing a separate and distinct tax either on the trustee or the beneficiary. The tax on either is as much a "separate and distinct tax" from that on "associations taxable as corporations" as are separate and distinct the taxes on holding companies and companies not holding companies. Both are income taxes imposed by the same Act. The Act makes the statute of limitations applicable alike to all classes of returns.

The Treasury Department in 1934 attempted to forestall the rule of the Germantown case, established in 1940, by incorporating in the Regulations providing Form 1120H for holding companies a similar erroneous conclusion of law. This conclusion of law is stated in the Regulations as, "However, since the surtax imposed under Title IA is a distinct and separate tax from those imposed under Title I, the making of a return under Title I will not start the period of limitation for assessment of the surtax imposed under Title IA." Art. 351-8, Treasury Regulations 86, promulgated under the Revenue Act of 1934.

The respondent's contention is that, despite the holding of the Germantown case, the contrary construction of the law placed *in* a regulation makes the construction of law a *regulation* within the regulatory power of the Secretary of the Treasury. The statement of the proposition answers it. It is the function of the courts and not the Secretary to determine the legal effect of his Regulations requiring the use of forms for different classes of taxpayers.

The limitation and penalty provisions of the Revenue Act of 1934 here in question are, §§ 275, 276, 291, 311, 26 U.S.C.A. Int. Rev.Acts, pages 748-750, 753:

"§ 275. Period of limitation upon assessment and collection

"Except as provided in section 276—

"(a) General rule. The amount of income taxes imposed by this title shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. * * *"

"§ 276. Same—Exceptions

"(a) False return or no return. In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time. * * *"

"§ 291. Failure to File Return

"In case of any failure to make and file a return required by this title, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, 25 per centum of the tax shall be added to the tax, * * *."

"§ 311. [Transferee liability.] * * *

"(b) Period of Limitation. The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

"(1) In the case of the liability of an initial transferee of the property of the taxpayer,—within one year after the expiration of the period of limitation for assessment against the taxpayer; * * *."

■ The 1934 taxes were not assessed within the four years of § 311, and Lane-Wells, transferee, is not liable for the tax for that year. Nor is Technicraft liable for the 1934 and 1935 taxes, assessed more than the three years of § 275 after its returns for those years.

■ Concerning the 1935 taxes, Lane-Wells claims that the Board could not hold it liable because of a stipulation that "Lane-Wells is liable as transferee for any taxes which may be found due from Technicraft." It contends that such a stipulation prevented the Board from holding it liable for a tax as transferee, after the statutory three year limit for assessing Technicraft. We do not agree. We are not required to determine whether the Commissioner has the power to waive any tax by stipulating that the time limited in the statute for assessment has passed, when it is apparent that

it has not. Here the stipulation, while stating that the transferee is liable for the tax due from the transferor, does not state that it is not liable for a tax which was due from the transferor but no longer collectible from the transferor because of the three year statute of limitation. We hold that the Commissioner properly assessed against Lane-Wells, as transferee, a tax in the amount of that owed by Technicraft for the year 1935, though not assessable against the latter.

■ Since under the Germantown decision the good faith return of all the facts necessary to compute a tax is a "return," though on a form for a different taxpayer, the Board erred in upholding the penalties determined by the Commissioner under §§ 276 and 291 for the tax years 1934, 1935 and 1936.

B. Technicraft is a personal. holding company and it and Lane-Wells, transferee, are liable for deficiencies assessed against Technicraft for the years 1935 and 1936.[2]

Technicraft, a California corporation, with its principal office in Los Angeles, was organized in December 1932. Throughout the periods in controversy its entire stock was owned by W. G. Lane, W. T. Wells, and their wives. These four individuals also owned the entire stock of Lane-Wells Company of California, Lane-Wells Company of Oklahoma, Lane-Wells Company of Texas, and Lane-Wells International, Inc. Lane and Wells were directors and officers of the various affiliated companies. Petitioners concede that Technicraft is liable for the tax as a holding company unless they have maintained their burden of proof before the Board that the Commissioner erred in deciding that 80 per cent of Technicraft's income in 1935 and 1936 was from "royalties" as defined in Treasury Regulations 94 promulgated for the Revenue Act of 1936, of which Art. 351-2(1) provides,

"(1) Royalties—The term 'royalties' includes amounts received for the use of or for the privilege of using patents, copyrights, secret processes and formulas, good will, trade marks, trade brands, franchises, and other like property. * * *"

■ The Board held that the income taxed by the Commissioner was made up in large part from royalties as so defined. There was no segregation in the evidence of the amounts other than royalties, or proof that such other amounts exceeded 20 per cent of the income. Since the evidence shows a very substantial portion of the income to be royalties and there is no segregation, the finding of the Board that the petitioners have not proved their negative, i. e., that the royalties did not equal 80 per cent of the income, must be sustained.

■ Petitioners further contend that none of the income consisted of royalties, because—although it was so denominated in agreements with the held companies—there was a prior agreement between Technicraft and the companies that all that was to be paid by them to Technicraft was for engineering services. We assume there was testimony from which such an agreement might be inferred. Our review, however, is confined to the determination whether "there is substantial evidence to support the conclusion" of the Board to the contrary. Helvering v. Kehoe, 309 U.S. 277, 279, 60 S.Ct. 549, 550, 84 L.Ed. 751. There is abundant such evidence.

Technicraft had patent rights in a perforator device known as the Mims patent, for shooting into oil bearing stratification or through oil well piping to free the flow of mineral oil or gas. The held companies were in the business of furnishing such perforator services. Technicraft made contracts with each of the held companies for the use of the Mims patent, for which each agreed to pay a "royalty" of 15 per cent of

[2] Revenue Act 1936, c. 690, 49 Stat. 1648:
"§ 351. Surtax on Personal Holding Companies
*    *    *    *    *
"(b) Definitions. As used in this title—
"(1) The term 'personal holding company' means any corporation (other than a corporation exempt from taxation under section 101, and other than a bank, as defined in section 104, and other than a life-insurance company or surety company) if—(A) at least 80 per centum of its gross income for the taxable year is de-rived from royalties, dividends, interest, annuities, and (except in the case of regular dealers in stock or securities) gains from the sale of stock or securities, and (B) at any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals. * * *" 26 U.S. C.A. Int.Rev.Acts, page 936. The Revenue Act of 1934, c. 277, 48 Stat. 751, § 351, 26 U.S.C.A. Int.Rev.Acts, page 757, is identical in its applicable provisions.

its gross receipts. It was the moneys so denominated "royalties" which Technicraft received which it returned to the Treasury for 1935 and 1936, also stating them to be "royalties". In the royalty agreements with the Oklahoma and Texas companies it was provided,

"I. Definitions:

"The term 'Perforators' shall be construed to mean not only the patent specifically mentioned hereinbefore, but also any and all inventions, applications, patents and any continuations, divisions, and/or reissues thereof and whether in the nature of apparatus or processes which the Licensor [Technicraft] now owns or controls or which it may at any time during the life of this agreement own or control and which relate or are accessories to said Perforators. The term 'Patent Rights' shall be construed to embrace as a group all the patents and applications herein specified or referred to or implied. The term 'gross receipts' shall be construed to mean the total receipts derived in any manner whatsoever from the manufacture and/or use of any and all apparatus or processes covered by said Patent Rights without deductions of any kind or character.

    *     *     *     *     *

"IV. Royalties:

"The royalty payments on the Patent Rights herein licensed shall be fifteen percent (15%) of the gross receipts; minimum royalties shall be not less than Seven Hundred and Fifty Dollars ($750.00) per month.

    *     *     *     *     *"

Technicraft conducted experiments, purchased test instruments, and built models of devices, some of which were sold to the Lane-Wells Company of California. Lane and Wells and employees of Technicraft assigned more than 50 patents to Technicraft. Technicraft owned at least 19 abandoned and unfiled inventions. In 1935 it had from 85 to 100 patents or patent applications which it was furnishing to the Lane-Wells companies by June 1, 1937, and of which seven or eight related to the basic principle of the Mims patent.

Obviously, the Board could reject the testimony of the prior agreements that the furnishing of these patents and models and mechanical devices or processes were mere professional engineering services paid for by the 15 per cent of gross income. It could infer that the transactions were just what they were called, "licenses" to use the pat-

ents' models and devices upon which 15 per cent of the gross income from their use constituted "royalties." As stated, if, in addition to the licensed matter, non-royalty devices were given for the same 15 per cent consideration, there was no segregation to show that they amounted to over 20 per cent of the taxed income. The Board properly decided that there were deficiencies in petitioners' income taxes for the years 1935 and 1936 in the amounts found in its decision.

Reversed and remanded for a recomputation of petitioners' income taxes for 1934, 1935 and 1936 in accord with this opinion.

Reversed and remanded.

The petition for rehearing is denied.