## NEW DEAL CAB CO. v. FAHS, U. S. Collector of Internal Revenue.
### No. 12455.

United States Court of Appeals
Fifth Circuit.
May 3, 1949.

John W. Donahoo and William T. Rogers, both of Jacksonville, Fla., for appellant.

Theron L. Caudle, Asst. Atty. Gen., George A. Stinson, Sp. Asst. to Atty. Gen., Howard P. Locke, Atty., Dept. of Justice, of Washington, D. C., and Herbert S. Phillips, U. S. Atty., of Jacksonville, Fla., for appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

Social Security taxes were assessed against and paid under protest by New Deal Cab Company for the years 1941, 1942, and 1943; refund was sought and denied, and the Collector is sued for their recovery. The district judge, sitting without a jury, found that the drivers of the Company's cabs were its employees and taxes were due in respect of their earnings as wages under the cases which then seemed controlling, United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757; Bartels v. Birmingham, 332 U.S. 126, 67 S.Ct. 1547, 91 L. Ed. 1947, 172 A.L.R. 317, and Fahs v. Tree-Gold Co-op. Growers, 5 Cir., 166 F.2d 40. The Company's contention is that each driver severally rents his cab, and is at most an independent contractor, the Company paying him nothing and having no concern with his earnings, and receiving a fixed rental for the use of the cab.

■ The statute levying the tax, Internal Revenue Code, Secs. 1400, 1600, 26 U.S.C.A. §§ 1400, 1600, speaks of "wages", "employer," and "employment." The Treasury Regulations (Reg. 106, sec. 402.204) defined thus:

"Who are employees—Every individual is an employee if the relationship between him and the person for whom he performs services is the legal relationship of employer and employee. Generally such employment exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and method by which that work is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. * * * In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee."

This is an excellent statement of the legal relations mentioned. The courts, however, desiring to further the objects of the tax, overrode the Regulation in the cases relied on by the district judge and added other tests. The late Congress, however, with the purpose expressed in the committee reports to reestablish the common law tests as stated in the Regulation, amended Internal Revenue Code, Secs. 1420(d), and 1607(i), 62 Stats. 438, 26 U.S.C.A. §§ 1420(d), 1607(i), so as to make common law rules applicable in determining the employer-employee relationship and the status of an independent contractor; and the amendments were made retroactive to the date of the original enactment of the sections. Congress thus rebuked the overzeal of the courts in trying to make a better law than the words of Congress had made.

Because of this legislative change we are of opinion that the judgment should be

reversed. The evidence is not in material conflict. Beginning prior to 1937 this corporation has been furnishing transportation to colored citizens in Jacksonville, Florida, by taxicabs it owned or controlled, driven by colored drivers, substantially on the plan about to be described. The drivers were members of Colored Taxicab Drivers Local Union No. 674, AF of L, which for them made the written contract between the Union and the Company in effect during the tax years. That contract states the terms on which the cabs were operated. Its first provision is:

"The said Union shall be the sole representative of the drivers who rent automobiles from said Company for use as taxicabs * * * in all collective bargaining had by lessees with the Company. The said Company shall not rent automobiles for use as taxicabs and shall permit taxicabs operated in its name only by members of said Union or persons eligible for membership, except as hereinafter provided."

"Rent" and "lessee" are the words used throughout. New drivers are required to join the Union. The Union is to handle all grievances and disputes, and if need be arbitrate them. Article 5. is:

"The Company agrees that the taxicab rental to be charged to lessees shall be as follows: From May 1 to Oct. 31 shall be $3.55 for the day shift and $2.85 for the night shift. From Nov. 1 to April 1 the rental shall be $3.50 for the day shift and $3.00 for the night shift. The above charges shall include the cost of all lubricating oil used by the taxicabs, which it to be furnished by the Company."

Gasolene is to be purchased by the drivers from the Company at a price two cents less than the prevailing filling station price, and be of a regular grade. If a taxicab breaks down for an hour or more, or is in the shop to be repaired or serviced or greased, the rental charge is to be adjusted accordingly. If drivers are charged with any infraction of a city ordinance or the rental agreement, Company action will be postponed for an investigation and hearing. It is agreed that there shall be no refusal to rent taxicabs and no strikes without the Company and Union using all possible means for a peaceful settlement. A lessee shall not be charged for damages to a taxicab until a stated hearing is had on the question of negligence; nor shall he be charged more than $10 for one accident; and not more than the cost of repair. No lessee shall be charged by the Company for damages for personal injuries. Seniority rights are established, and a list of taxicab lessees is to be kept by the Company. Except for dishonesty or drunkenness the Company will not permanently refuse to rent taxicabs to any lessee without a hearing participated in by the Union, but a lessee without a city permit or who is unsatisfactory to the Company's insurance carrier shall in no event be rented a cab. The insurance carrier referred to is of public liability and property damage insurance, which the contract permits, requiring observance of the insurer's rules and regulations.

■ Under this contract the practice was for the Company in its garage adjacent to its parking lot to keep the cars serviced and in repair. The drivers for each shift reported at 4:45 A.M. and 4:45 P.M., each selected his car, filled it with gasolene, and drove away. He kept a deposit of $10 as security. When he returned the car at the end of the shift he paid the rental, and for the gasolene used, making no report of where he had been or what he had earned. He was under no control by the Company and had no instructions as to where he should seek patrons, what he should charge them, or what he should do with the car. He could use it for his own purpose, for a trip, or even to go fishing. The Company's only interest was to get its rental and pay for gasolene. It did for a part of the time have four or five 'phones in remote parts of the colored district of the city where there were no private 'phones, but these were not for cab stations or for the drivers to report their whereabouts, but to report flat tires or breakdowns so that aid might be sent. If a patron 'phoned the office for a cab, there was no way to send one unless to wave one down on the street, and the driver then was free to answer the call or not, as he wished. The Company did not, as the district judge found, cruise the city to observe infraction

of its rules. The cruising, when done, was by the insurance carrier, as provided in the contract.

The contract looks like a labor contract, but the National Labor Relations Board has had nothing to do with it. The Union was voluntarily recognized as the bargaining agent and general representative in this business for these men, who probably were in large measure unqualified to represent themselves. It appears to be a bona fide effort to safeguard their interests and to express the nature of their relationship. The dominion of the driver over his cab in practice was so complete as to be truly described as a "rental" of it. When habitual, he is well referred to as a "lessee" of it. But it is undeniable that the Company itself was running a business of carrying passengers for hire rather than the mere casual renting of cars; for it had a city license so to do, and there would be little demand for its cars otherwise. But it could, if it chose, get the work done by independent contractors instead of by hired employees. This is in effect what it did, but in a very loose way, because the drivers did not expressly agree to accomplish this work. Self interest alone seems to have been relied on, for hauling passengers would be the driver's best source to make money, and to meet his positive obligation to pay rental and for gasolene. The Company paid him no wages and promised him none. He took the entire risk of his day's business, and might lose instead of gaining. He chose where he would go and what he would do, or whether he should go at all. He was wholly independent, though only vaguely a contractor, except for the car rental. What he took in was his. If he ran away with the money there would be no embezzlement. The amount earned was of no concern to the Company till the demand was made for these taxes, measured by wages, and tax investigators demanded that the earnings be approximated. The men were then asked to estimate their average take, and a few cents per day were additionally collected for their part of the tax in the daily settlements. Applying the common law rules as commanded by the recent legislation, it cannot be held that these drivers

are employees and that the money they earn is wages. The tax was wrongly collected. A full discussion is found in Party Cab Co. v. United States, 7 Cir., 172 F.2d 87.

The judgment is reversed and the cause remanded with directions to enter a proper judgment for the plaintiff.