**Martin L. SPRINGFIELD, dba Douglas Motors, Plaintiff–Counter–Defendant–Appellant,**

**v.**

**UNITED STATES of America, Defendant–Counter–Claimant–Appellee.**

No. 95–55270.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 1996.

Decided July 3, 1996.

Patricia A. Isaacs, El Cajon, California, for plaintiff-counter-defendant-appellant.

Anthony T. Sheehan, Department of Justice, Washington, DC, for defendant-counter-claimant-appellee.

---

Before: REINHARDT, KOZINSKI, and HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

When the government ignores a taxpayer's contentions as to the real world conditions of the marketplace, despite the requirements of Congress that it consider them, it invites the result reached here.

Martin L. Springfield brought this action to recover various employment taxes, penalties and interest paid under protest for the tax quarter ending September 30, 1986. The government counterclaimed for the balance of the assessments of tax, interest and penalties made against him for the taxable quarters ending September 30 and December 31, 1983, and each of the taxable quarters ending 1984 through 1988. After a bench trial, judgment was entered against Springfield and in favor of the government. Because the trial court erred in concluding that Springfield is liable for the assessments, we reverse.

Springfield owned Douglas Motors, a used car business in the San Diego area. From 1983 to 1988, Springfield treated his salesmen as independent contractors and filed Forms 1099 on their behalf. Because of this treatment, Springfield did not withhold income taxes or the salesmen's share of the Federal Insurance Contributions Act (FICA or Social Security) taxes as required for employees under I.R.C. §§ 3402(a) and 3102(a) respectively. He also did not pay excise taxes under I.R.C. § 3111 (the employer's share of FICA tax) or § 3301 (Federal Un-

employment Tax Act (FUTA) tax) and, therefore, did not file Forms 940 or 941.[1]

The Internal Revenue Service (IRS) began investigating Springfield's tax treatment of his salesmen in 1989 after being contacted by an individual who had previously worked for Douglas Motors. The IRS eventually concluded that Springfield's salesmen were employees and should have been treated as such for tax purposes. Consequently, in 1991 it assessed Springfield withholding taxes, FICA taxes, FUTA taxes, interest and penalties for the taxable quarters ending September 30 and December 31, 1983, and each of the taxable quarters ending 1984 through 1988.

Springfield paid a portion of the assessments and then timely filed a refund claim with the IRS. Six months passed. Having failed to hear from the IRS, Springfield filed a refund suit in federal district court. The government counterclaimed, seeking the balance of the assessments.

Springfield filed a partial motion to dismiss the government's counterclaim, contending that the assessments for the periods prior to 1988 were barred by the three-year statute of limitations for tax assessments set forth in I.R.C. § 6501(a). The district court denied the motion. The case then proceeded to a bench trial in front of a magistrate judge, who entered judgment in the government's favor with respect to both Springfield's claim and the government's counterclaim.

Springfield timely appealed. Springfield challenges the district court's finding that the pre–1988 assessments are not barred by the statute of limitations and the magistrate judge's finding that he is not entitled to treat his salesmen as independent contractors pursuant to the "safe haven" provision of § 530 of the Revenue Act of 1978.[2]

1. FUTA and FICA taxes are reported on Forms 940 and 941 respectively.

2. Section 530 of the Revenue Act of 1978, Pub.L. No. 95–600, 92 Stat. 2763, 2885–86, was originally intended to provide interim relief for taxpayers who were involved in employment tax controversies with the IRS, and it therefore initially applied only to periods prior to January 1,

1980. H.R.Rep. No. 1748, 95th Cong., 2d Sess. 4 (1978), *reprinted in* 1978–3 C.B. 629, 632. It was temporarily extended twice and then extended indefinitely by Section 269 of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, 96 Stat. 324, 552. Section 530 was never codified, but it is reproduced in the notes following I.R.C. § 3401.

## ANALYSIS

### I. Statute of limitations

■ We review de novo whether the statute of limitations is tolled by the filing of a tax form. *See Washington v. Garrett,* 10 F.3d 1421, 1428 (9th Cir.1993) (district court's dismissal of action on statute of limitations ground reviewed de novo); *see also Atlantic Land & Improvement Co. v. United States,* 790 F.2d 853, 857 (11th Cir.1986) (whether three year statute of limitations on certain tax assessments commenced when taxpayer filed and paid other taxes was question of law reviewed de novo).

■ I.R.C. § 6501(a) provides that the amount of any tax imposed by the Code shall be assessed within three years of the filing of the return. Springfield contends that the government's pre–1988 assessments are untimely because they were made more than three years after he filed Forms 1099 for his salesmen, which he contends are "returns" within the meaning of § 6501(a). The government contends that the filing of Forms 1099 did not start the three years running because the "returns" Springfield was required to file were Forms 940 and 941.

The resolution of this issue is governed by the United States Supreme Court's holding in *Commissioner v. Lane-Wells Co.,* 321 U.S. 219, 64 S.Ct. 511, 88 L.Ed. 684 (1944). In that case, the taxpayer was a corporation that filed the usual corporation income tax returns on Form 1120 but failed to file a personal holding company income tax return on Form 1120H, believing in good faith that it was not a personal holding company within the meaning of the Revenue Act of 1934. On appeal, we held that by disclosing its gross income, deductions and resulting net income, the corporation "showed all the facts necessary for the respondent to compute the taxes as a personal holding company obligation" and, therefore, the statute of limitations began to run upon the filing of the Form 1120. *Lane-Wells Co. v. Commissioner,* 134 F.2d 977, 978 (9th Cir.1943).

The Supreme Court reversed, however, explaining that a taxpayer does not start the statute of limitations running by filing one return when a different return is required if the return filed is insufficient to advise the Commissioner that any liability exists for the tax that should have been disclosed on the other return. The Supreme Court explained that the relevant inquiry is whether the return filed sets forth the facts establishing liability. 321 U.S. at 223, 64 S.Ct. at 513. It noted that the liability for personal holding company income tax was expressly denied on Lane–Wells' Form 1120 "and to obtain data on which corporations subject to the tax could be identified and assessed was the very purpose of requiring a separate return addressed to that liability." *Id.*[3]

Although the information provided on Form 1099 is similar to the information provided on Form 941, Form 1099 requests information about non-employee compensation while Form 941 requests information about employee compensation. Thus, an IRS official reviewing a Form 1099 is led to believe that the recipient is not an employee and has no way of knowing from the information provided that the taxpayer is liable for employment taxes for the individual named on the form.

Assuming an individual should be treated as an employee, the filing of Form 1099 would not necessarily alert the IRS that the employer/taxpayer is liable for additional taxes resulting from the individual's employment status. Thus, the filing of Form 1099 cannot start the statute of limitations running. Consequently, the district court was correct in holding that, assuming Springfield's salesmen should be treated as employees, the pre–1988 assessments are not barred by the statute of limitations. While the rule set forth by the Supreme Court may be harsh in its applicability in at least some instances and while the result may be that individuals or corporations may never know with certainty that they are free from tax liability for periods long past, any change in the rule must be made by Congress and not this court.

We now turn to the merits and, in particular, to Springfield's contention that he quali-

---

**3.** *See also Ginter v. United States,* 815 F.Supp. 1289, 1292 (W.D.Mo.1993) (statute of limitations did not run until filing of Forms 940 and 941 although taxpayer classified workers as independent contractors and filed Forms 1099).

fies for "safe haven" treatment because he had a reasonable basis for treating his employees as independent contractors.

## II. Section 530 of the Revenue Act of 1978

█ Through language that gives new definition to the word arcane, § 530 provides that if a taxpayer does not treat an individual as an employee for employment tax purposes for any period and files all of the required federal tax returns on a basis consistent with the taxpayer's treatment of the individual, that individual "shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee." Whether § 530 relieves a taxpayer of liability is a question of statutory interpretation reviewed de novo. *Spicer Accounting, Inc. v. United States,* 918 F.2d 90, 92 (9th Cir.1990). However, we review for clear error the trial court's finding that the hiring of salesmen as independent contractors was not a recognized practice among a significant segment of the industry. *General Inv. Corp. v. United States,* 823 F.2d 337, 340 (9th Cir.1987).

Springfield has the burden of establishing that he meets the requirements of § 530 by a preponderance of the evidence. Although § 530 is to be liberally construed in favor of the taxpayer, H.R.Rep. No. 1748, 95th Cong., 2d Sess. 5 (1978), we agree with the Eighth Circuit in *Boles Trucking, Inc. v. United States,* 77 F.3d 236, 241 (8th Cir.1996), that the preponderance of the evidence standard applies because there is nothing in the language of § 530 or its legislative history that suggests that Congress intended to reduce the taxpayer's usual burden of proof.

The government admits that Springfield meets the first two requirements of § 530, but contends that Springfield has failed to demonstrate a reasonable basis for treating his salesmen as independent contractors. Reasonable reliance on any of the following constitutes a reasonable basis for not treating an individual as an employee: "(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer; (B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of individuals holding positions substantially similar to the position held by [the individual in question]; or (C) longstanding recognized practice of a significant segment of the industry in which such individual was engaged." § 530(a)(2). In addition, a taxpayer may demonstrate any other reasonable basis for the treatment of an employee for tax purposes.

This is not a case where we are asked to review the trial court's interpretation of conflicting evidence. At oral argument, counsel for the United States did not dispute that the evidence established that at all relevant times independent used car dealerships constituted a significant segment of the San Diego used car industry and that these dealerships generally treated their salesmen as independent contractors.[4] Rather, we are asked to review the trial court's conclusion that, because the evidence also demonstrated that franchise dealerships that sell used cars treated their salesmen as employees, the independent dealerships' practice of treating

**4.** We commend government appellate counsel for his candor with the court. We note that at trial, Springfield presented an abundance of evidence establishing that it was the practice of San Diego's independent used car dealers at all relevant times to treat their employees as independent contractors, and the government failed to rebut this evidence.

Springfield himself testified that the individual from whom he purchased Douglas Motors treated the salesmen as independent contractors and that he continued this practice after buying the business. Springfield testified that he had the opportunity to talk to between 50 and 100 independent used car dealers who sold retail, and all of those dealers treated their salesmen as independent contractors. Springfield also testified

that he talked with a Mr. Hoffman, who owned a used car business and who said he used independent contractors from 1978 to 1988.

One of Springfield's witnesses, who has been a car salesman for forty years, testified that he knew of other independent used car dealers whose salesmen were independent contractors. Another witness testified that prior to working for Springfield he worked at another place where they had independent contractor salesmen. He also testified that "unless there was a new car franchise, all the other guys that I knew that were doing what I did were independent contractors." A third witness testified that after working at Douglas Motors, he went to Valley Auto Sales, where he worked as an independent contractor. He testified that, in all, he had

their salesmen as independent contractors could not logically be a "long-standing ... practice of a significant segment of [the used car] industry" under § 530.

The plain language of § 530 makes clear that to demonstrate a reasonable basis for the tax treatment, a taxpayer must prove that a *significant* segment of the industry follows a particular practice—not that *every* segment of the industry follows that practice. To underline this point, the legislative history of § 530 specifically provides that the practice in a given industry need not be uniform in order for the taxpayer to demonstrate that certain individuals should not be deemed employees. H.R.Rep. No. 1748, 95th Cong., 2d Sess. 5, *reprinted in* 1978–3 C.B. 629, 633.

Springfield put on substantial proof that a significant segment of the used car industry treated its salesmen as independent contractors, thus demonstrating a reasonable basis for treating his salesmen in this manner. The government put on evidence of the practices of a different portion of the industry, but nothing to contradict Springfield's evidence of the practices followed by independent used car dealers. Consequently, pursuant to § 530, Springfield is entitled to safe haven treatment and his salesmen should be deemed not to have been employees. Springfield is thus entitled to judgment on his claim as well as the government's counterclaim.

## CONCLUSION

In light of the foregoing, we reverse and remand to the district court with instructions to enter judgment in Springfield's favor.

REVERSED AND REMANDED.

worked as an independent contractor at four different places. When asked whether he knew of any other independent used car dealers who had salespeople who were independent contractors, he explained that the use of independent contractors was "widespread."

The government did nothing more than establish that another segment of the used car industry, that of franchise dealerships, treated their salesmen as employees. For example, one of the government's witnesses testified that prior to opening his own dealership, he worked for franchise dealerships and was treated as an employee rather than as an independent contractor. Although he also testified that upon opening his own used car dealership in 1988 he treated his salesmen as employees, he did not testify as to the practice in the independent used car industry. Similarly, another government witness simply testified that it was *his opinion* that a car salesman should be treated as an employee.