**MARLAR, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. C95–729D.**

United States District Court,
W.D. Washington.

Aug. 2, 1996.

F. Michael Kovach, Jr., Seattle, WA, Wendy S. Pearson, Pearson Law Offices, Seattle, WA, for plaintiff.

Diane E. Tebelius, U.S. Attorney's Office, Seattle, WA, W. Carl Hankla, U.S. Department of Justice, Tax Division, Washington, DC, for defendant.

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

DIMMICK, Chief Judge.

THIS MATTER is before the Court on plaintiff Marlar, Inc.'s ("Marlar") motion for summary judgment, pursuant to Fed. R.Civ.P. 56. Marlar, owner of a club which features nude and semi-nude dancing, protests its liability for certain employment taxes, which the Internal Revenue Service ("IRS") insists should have been paid for the dancers. Marlar paid the taxes for one of the dancers for each quarter in question and brought this action for refund; the government counterclaimed for taxes, penalties, and interest.

Marlar seeks summary judgment on two alternative bases: (1) that the dancers are lessors of spaces in Marlar's club and therefore are not employees; or (2) that Marlar falls under an exception granting a safe haven to an employer who has a reasonable basis for his tax treatment (§ 530).

After hearing oral argument and fully considering the briefs filed by counsel, the Court grants summary judgment pursuant to § 530.

### FACTS

October 10, 1994—The IRS assessed Marlar for FICA and withholding taxes (Form 941 taxes), and FUTA (Form 940 taxes), plus penalties and interest for taxes accruing in 1990 and 1991.[1] Marlar paid the FICA and withholding tax assessments for one employee for each quarter ending March 31, 1990 through December 31, 1991 for a total of $2,060, and the FUTA tax assessment for one employee for 1990 and 1991 in the amount of $868.[2]

The government counterclaimed and requested judgment in the amount of $282,082.11 plus interest and penalties accruing

since October 10, 1994. The Court has jurisdiction pursuant to 26 U.S.C. § 7402 and 28 U.S.C. §§ 1340, 1345, and 1346(c).

Marlar operates an adult entertainment establishment, Club Extasy. Dancers who entertained at the club during the period in question obtained a license as required by the City of Seatac and signed a Dancer Performance Lease with the club which obligated them to pay the following rents:

PERFORMER agrees to pay rent to OWNER, for each scheduled shift a summ (sic) equal to $[40.00] plus $2.00 for each couch dance per shift. For ladies drink, sold by PERFORMER, subject to a maximum a (sic) four (4). $10.00 shall be deducted from the rent due for each scheduled shift. All rental shall be to OWNER immediately upon completion of any shift.

The agreement also established scheduling and public dance requirements. Apparently, the lease agreement was not enforced in all particulars. Marlar insists that it never collected a percentage of the dancer's earnings and never kept track of them.

The government contends that the following facts establish at least an issue of fact as to the lessor/lessee relationship: Marlar interviewed, hired and fired its dancers; Marlar advanced dancers the money to obtain SeaTac entertainment licenses; Marlar kept possession of the licenses, restricting the dancers' ability to work at other clubs; Marlar had a manager on duty in the club at all times; Marlar instructed the dancers as to when, where and how their work was to be performed by conducting private and "house" meetings regarding rules of conduct; Marlar required dancers to attend "house" meetings and has fired at least one dancer for failing to attend; Marlar penalized dancers for tardiness and breaking other rules; Dancers could not "sublet"—their services are personal; Marlar set standard charges for dance

---

1. "FICA" refers to the Federal Insurance Contributions Act (Social Security) of the Internal Revenue Code, 26 U.S.C. § 3101, *et seq.* Specifically, an employer is required to withhold taxes from wages pursuant to §§ 3102(a) and 3402(a), and to pay an employer's share of FICA pursuant to § 3111. "FUTA" refers to the Federal Unemployment Tax Act, 26 U.S.C. § 3301, *et seq.*

2. The government's answer and counterclaims states that the FUTA amount is insufficient, but this does not appear to be material to the principal question before the Court.

performances and posted a schedule of those charges in the club; Marlar required dancers to work a minimum number of shifts per week, with a minimum number of consecutive hours per shift; Marlar required dancers to dance in rotation on the main stage pursuant to a schedule prearranged by Marlar's disc jockey; and Marlar required or expected dancers to provide occasional "house dances" at no charge. Dances on the main stage were essential to Marlar's business, but dancers were not paid for these dances by the customers. Customers could also pay for their private dances with script purchased from the management. The dancers could then redeem the script for cash, with a 10% deduction.[3]

Additionally, the government insists that there are issues of fact as to industry practices, and asserts that Marlar did not have an opinion from a tax expert as to its treatment of dancers as non-employees. These latter facts go to the issue of § 530 safe haven, and will be discussed in detail in that section.

## DISCUSSION

The issues are the following:

(1) Are the dancers employees of Marlar for purposes of FICA and withholding taxes, and FUTA?

(2) Can Marlar be liable for the taxes if it does not pay the dancers' wages?

(3) Is Marlar entitled to relief under the provisions of § 530 because its treatment of dancers as lessors was based on the "longstanding recognized practice of a significant segment of the industry in which such individual was engaged"?

*Characterization of Relationship*

 Marlar characterizes its relationship with the dancers as lessor/lessee, and emphasizes the independence of the dancers and their receipt of payment directly from their customers. Its basic premise is that it can-

not be held liable for employment taxes where it paid no wages, but merely rented space to the dancers, with this rent reported as income by Marlar. *See, e.g., Manchester Music Co., Inc. v. United States,* 733 F.Supp. 473 (D.N.H.1990) (discussing meaning of "payment" for purposes of filing a Form 1099). Pointing to the statutes themselves, Marlar defines wages as payments:

> ... there is hereby imposed on every employer an excise tax ... equal to the following percentages of the wages ... **paid by him** ....

26 U.S.C. § 3111 (emphasis added).

> ... there is hereby imposed on every **employer** (as defined in section 3306(a)) ... an excise tax [on] the total wages ... **paid by him** with respect to employment ....

26 U.S.C. § 3301 (emphasis added).

"Wages" in this context are amounts paid by the putative employer for services rendered to that employer, as the applicable statutes make clear:

> ... the term "wages" means all remuneration ... for services performed by an **employee** for his **employer** ....

26 U.S.C. § 3401(a);

> ... the term "wages" means all remuneration for employment ....

26 U.S.C. § 3306(b).

The obligation to withhold taxes is also imposed upon employers who pay wages:

> ... every **employer making payment of wages** shall deduct and withhold upon such wages a tax ....

26 U.S.C. § 3402 (emphasis added).

The government counters with the statute, contending that FICA itself provides that an employee will be defined by common law:

> For purposes of this chapter, the term "employee" means— ... any individual who, under the usual common law rules applicable in determining the employer-

---

**3.** This paragraph was paraphrased from IRS Agent Vangen's declaration. The relevance of some of the government's so-called facts is questionable, e.g., the Declaration of Julie Giraud relates to her experiences as a dancer at Club Extasy from 1993 to 1995; whereas the taxes at issue were for 1990 to 1991. Moreover, a law

suit filed by Giraud with a copy attached to her declaration, supports the plaintiff's characterization of a lease. She refers in the suit to "a stage rental contract with defendant whereby plaintiff rented stage space from defendant to perform as a nude dancer...."

employee relationship, has the status of an employee....

26 U.S.C. § 3121(d)(2). Wages are defined in 26 U.S.C. § 3121 as meaning "all remunerations for employment, including the cash value of all remunerations (including benefits) paid in any medium other than cash...." with certain exceptions.

The government further argues that the degree of control that Marlar exercised over the dancers is indicative of an employer/employee relationship. The common law looks to a number of indices of employer-employee, but the most significant is degree of control. *See, e.g., Alsco Storm Windows, Inc. v. United States,* 311 F.2d 341 (9th Cir.1962).

The government cites to a Ninth Circuit case in which the court held that a contractual relationship between the parties did not conclusively define a licensee/licensor relationship for taxi dancers. *Matcovich v. Anglim,* 134 F.2d 834 (9th Cir.), *cert. denied,* 320 U.S. 744, 64 S.Ct. 46, 88 L.Ed. 441 (1943). Relying on the control exerted by the dance hall proprietor, the court held that the proprietor was an employer liable for social security taxes, quoting *Griffiths v. Helvering,* 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319 (1939):

> Legislative words are not inert, and derive vitality from the obvious purposes at which they are aimed.... Taxes cannot be escaped "by anticipatory arrangements and contracts however skillfully devised ... by which the fruits are attributed to a different tree from that on which they grew." *Lucas v. Earl,* 281 U.S. 111, 115, 50 S.Ct. 241 [241], 74 L.Ed. 731 (1930)....

*Matcovich* at 837. The government contends that the relationship between Marlar and the dancers is analogous. The dancers in *Matcovich,* however, received tickets purchased by patrons from the establishment, and the dancers redeemed the tickets and received a percentage in return.

A Fifth Circuit opinion also offers instructive analysis. *United States v. T.S. Fleming,* 293 F.2d 953 (5th Cir.1961). The issue in *Fleming* was whether taxi drivers paid directly by their customers could be characterized as employees, thus requiring the company which received a percentage of the fees to pay federal employment taxes. In determining that the drivers were employees, the court relied on the degree of control and supervision exercised by the company. The collection of payments was determined to be for the account of the employer, with a commission withheld for the driver. The Fifth Circuit took pains to distinguish this case from an earlier one. *New Deal Cab Co. v. Fahs,* 174 F.2d 318 (5th Cir.), *cert. denied,* 338 U.S. 818, 70 S.Ct. 62, 94 L.Ed. 496 (1949). In the *New Deal* case, the company had little or no control over the drivers as to the amount they received. "The drivers paid fixed sums for the use of the cabs, and receiving this the cab company, neither knew nor cared what the drivers were doing." *Fleming* at 957.

In a recent opinion in which a landlord/tenant relationship was asserted, the court held that private booth performers were employees. *303 West 42nd Street Enterprises, Inc. v. IRS,* 916 F.Supp. 349 (S.D.N.Y.1996). In that case, the performers were paid directly by the customer through coins deposited in a box and in addition, the customer deposited coins into another box, 40% of the proceeds of which were shared with the dancer. The 60% retained by the establishment was designated "rent," with a lease agreement signed by the performers. Basing its conclusion on common law factors, the court held that the performers were employees and not independent contractors as the taxpayer had suggested as an alternative. There was no discussion in this opinion as to the issue of "wage payments", and it clearly differs from the present case in how "payments" to performers and "rent" to the establishment were paid. The New York court held that "the 40% coin money is akin to wages and the 100% cash money is akin to a tip." *Id.* at 361.

The government cites to a number of cases in which the issue is whether a party is an independent contractor or an employee. *See, e.g., General Investment Corp. v. United States,* 823 F.2d 337 (9th Cir.1987). These cases differ from the present case, however, in that money is paid directly by the taxpay-

er to the worker (independent contractor).[4]

■ The government also relies on Fair Labor Standards Act ("FLSA") cases defining employees. *See, e.g., Reich v. Circle C. Investments, Inc.,* 998 F.2d 324 (5th Cir. 1993). However, this reliance may not be justified given the remedial nature of FLSA. "The FLSA's definition of employer must be liberally construed to effectuate Congress's remedial intent [to protect the worker]." *Id.* at 329 (citation omitted). Whereas, § 530 is to be liberally construed in favor of the taxpayer. The Ninth Circuit reads this to mean that taxpayers must prove by "preponderance of the evidence." *Springfield v. United States,* 88 F.3d 750 (9th Cir.1996).

Marlar relies on a case from the Fourth Circuit: *Magruder v. Yellow Cab Co. of D.C.,* 141 F.2d 324 (4th Cir.1944). The *Magruder* court affirmed the trial court, holding that there was no basis for a determination that taxi drivers were employees where the company exerted no control over drivers; drivers paid a set rental price; there was no indication that the lease contract covered a sham relationship; and no money was paid by the company to the drivers.

In sum, the government argues that the Marlar dancers are employees based on common law factors. They argue that the purported lessor/lessee relationship is a sham to disguise an employer/employee relationship—that the dancers are in constructive receipt of money for Marlar, and a percentage of money received by the dancers goes to Marlar. Moreover, dancers are paid by Marlar in that they receive money paid for ladies' drinks.

■ The *Magruder* case just described and the Ninth Circuit case on the taxi dancers cited by the government (*Matcovich*) are consistent that a contractual arrangement may be overlooked if it is an attempt to redefine the real relationship. But relevant facts are disputed here as to the degree of Marlar's control and the dancer's independence.

This Court concludes that an accurate definition of the relationship between Marlar and the dancers may well be "lessor/lessee." Issues of fact preclude such a decision on summary judgment, however.

*Section 530 Safe Harbor.*

■ Even if the Court were to conclude that Marlar is liable for employment taxes for its dancers, Marlar contends as an alternative ground for summary judgment that it is entitled to have the taxes forgiven pursuant to § 530 of the Internal Revenue Code ("IRC"). Section 530 of the Revenue Act of 1978 [5] reads in pertinent part as follows:

(a) **Termination of certain employment tax liability.—**

(1) **In general.—**If—

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and

(B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee, then for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

(2) **Statutory standards providing one method of satisfying the requirements of paragraph (1).—**For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable

---

4. In Marlar's complaint, it referred to the dancers as independent contractors, but at the same time clearly expressed its intent to rely on the characterization of the dancers as lessees, and the fact that it had never filed a Form 1099 as required for an independent contractor. Complaint at 6. Counsel for Marlar has filed a declaration to the effect that there was no intent to characterize the dancers as independent contractors for tax purposes. The statements in the complaint do not amount to an "admission". The characterization of the dancers is ultimately a legal conclusion for the Court to make.

5. As explained in *Springfield v. United States,* 88 F.3d at 751 n. 2, this section has never been codified, but is located in the notes following 26 U.S.C. § 3401.

basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:

\*　\*　\*　\*　\*　\*

(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

The government has offered no evidence to contradict Marlar's assertion that it was following industry practice. *See* Miller and Faulkner Depositions and Declaration of Pam Dougal. Indeed, government agent Vangan stated that the lease arrangement was standard practice in the industry. Rather the government has attacked any reliance on § 530 on the basis that Marlar's tax accountant had not given advice on the legitimacy of the lease arrangement, and that Marlar had not filed a Form 1099 as required for independent contractors. The government refers to one entertainment club that did file Form 1099. Because the Centerfolds Club filed a 1099 for its dancers as independent contractors in 1994 (not the period in question), the government argues that there is no industry-wide standard, citing *303 West 42nd Street Enterprises,* 916 F.Supp. at 355. Moreover, Centerfolds demonstrated the feasibility of keeping track of money received by dancers. Alternatively, the government argues that filing of a Form 1099 is precedent to § 530 relief.

Marlar counters that its accountant was not asked specifically whether the dancers should be treated as lessees. The accountant, however, prepared final tax returns and reported rental payments. He also testified that there had been no disbursements to dancers; therefore, there was nothing to report on W–2 or 1099 forms. *See* Anderson Deposition at 14–18. The accountant also stated that he was aware of the adult entertainment business and was not aware of any club which treated its entertainers as employees.

The government's argument regarding independent contractors has been touched on above. To be an independent contractor, a worker receives payment from the taxpayer, who must in turn report on the Form 1099 if he makes payments of $600 or more.

All persons engaged in a trade or business and making payment in the course of such trade or business to another person of rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable gains, profits and income ... shall render a true and accurate return to the secretary.

26 U.S.C. § 6041.

Again, Marlar insists it made no payments to the dancers and had no basis for determining their receipts from patrons, thus, it had no obligation to file a Form 1099. Most significantly, Marlar has produced uncontradicted evidence that a substantial segment of the industry does contract with the dancers as lessees. The Ninth Circuit's recent opinion makes it very clear that "substantial segment" of the industry does not mean that the entire industry follows this practice.

The plain language of § 530 makes clear that to demonstrate a reasonable basis for the tax treatment, a taxpayer must prove that a significant segment of the industry follows a particular practice—not that every segment of the industry follows that practice. To underline this point, the legislative history of § 530 specifically provides that the practice in a given industry need not be uniform in order for the taxpayer to demonstrate—that certain individuals should not be deemed employees. H.R.Rep. No. 1748 95th Cong., 2d Sess. 5, reprinted in 1978—3 C.B. 629, 633.

*Springfield v. United States,* 88 F.3d at 754.

Additionally, even in the case of the Centerfolds Club offered by the government, dancers are not treated as employees. This then reflects a consistent practice throughout the industry to treat dancers as non-employees.

This Court concludes that § 530's safe haven provision applies to Marlar, when virtually the entire industry treats dancers as lessees. There is no evidence that other clubs filed Forms 1099 during the period in question—1990 and 1991. The government's insistence that a Form 1099 filing is prerequi-

site to § 530 relief is anomalous given the government's insistence that the dancers are employees, not lessees. Moreover, the clear intent of § 530 is to protect taxpayers who have a reasonable basis for their tax treatment. To require a trial to establish the legal definition of a relationship would obviate the provision that a taxpayer may rely on a "long-standing recognized practice of a significant segment of the industry" as reasonable. Here it is undisputed that the industry. treats dancers as lessees. A lessor/lessee relationship does not require filing of a Form 1099. Plaintiff Marlar has filed "all of the required tax returns on a basis consistent with the taxpayer's treatment of the individual" dancers as lessees. *Springfield* at 753.

THEREFORE, plaintiff's motion for summary judgment is GRANTED and defendants' counterclaim is dismissed. Plaintiff is entitled to a refund of taxes paid for 1990–91.

The Clerk of the Court is directed to send copies of this Order to all counsel of record.