T.C. Memo. 2003-13

UNITED STATES TAX COURT

RONALD McLEAN EASTERN VIDEO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7721-01.                    Filed January 14, 2003.

Ronald McLean, for petitioner.

<u>Michael K. Park</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial
Judge John F. Dean pursuant to section 7443A(b)(5) and Rules 180,
181, and 183.[1]  The Court agrees with and adopts the opinion of
the Special Trial Judge, which is set forth below.

---

[1]  Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the year and quarters at
issue, and Rule references are to the Tax Court Rules of Practice
and Procedure.

OPINION OF THE SPECIAL TRIAL JUDGE

DEAN, Special Trial Judge:  This case is before the Court on a petition, as amended, under section 7436 as in effect at the time the petition was filed.  The petition seeks review of a notice of determination concerning worker classification.

In a notice dated March 14, 2001, respondent determined that:  (1) Felicia Reed, Andrea Trent, Shemeka Morgan, Eric Patrick, Tracey Ashley, and Kathy Wayne (video workers) were employees of Ronald McLean Eastern Video (petitioner) for Federal employment tax purposes during each of the four quarters of the calendar year 1996; and (2) petitioner is not entitled to relief from Federal employment taxes as provided by section 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2885 (section 530), as amended.  The reference here to employment taxes is to Social Security taxes under the Federal Insurance Contributions Act (FICA) and unemployment taxes under the Federal Unemployment Tax Act (FUTA).

The parties have stipulated that the amount of FUTA taxes due if the video workers were employees is $387.  The issues remaining for decision are:  (1) Whether the video workers were common law employees of petitioner during the four quarters of 1996; and if so, (2) whether petitioner is entitled to section 530 relief from employment taxes due on wages paid to the video workers.

The stipulated facts and exhibits received into evidence are incorporated herein by reference. At the time the petition in this case was filed, Ronald McLean (Mr. McLean), doing business as Ronald McLean Eastern Video, resided in College Park, Georgia.

FINDINGS OF FACT

During the quarters at issue, petitioner operated as a sole proprietorship. It operated as a video rental business from two locations in Atlanta, Georgia, under the name Eastern Video. Mr. McLean filed a Form 1040, Individual Income Tax Return, for 1996 with a Schedule C, Profit or Loss From Business, in the name of Eastern Video. Among the items of expense reported on the schedule were "contractual services" of $26,160 and wages of $60,706.

Petitioner issued Forms W-2, Wage and Tax Statement, to three employees, Gladys Favors, Angela Trimble,[2] and Kevin Walton, for wages totaling $50,544 for 1996. It also filed Forms 941, Employer's Quarterly Federal Tax Return, and a Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, for 1996 reporting total wages of $50,544 paid to employees. The three full-time employees performed whatever duties were required to run the video stores.

---

[2] The stipulation of facts refers to her as Angela "Halsey" while the associated exhibit refers to her as Angela "Trimble". There is no explanation in the record for this discrepancy.

The video workers were paid a total of $10,162 in income reported by Forms 1099-MISC, Miscellaneous Income. The video workers were hired with the intent of having them collect late fees and overdue video tapes, "lates". Because of bad experiences in the past with hiring "outsiders" to collect his "lates", Mr. McLean decided "to hire some people and they're going to have to work within my operation."

Two of the six video workers, however, Tracey Ashley and Eric Patrick, were teenagers who, according to Mr. McLean, were "employees that worked" after school about 10 hours a week at the "North Moreland" location. They were not experienced at collection work, and there was not much collection work being done at their location. Their primary function was not collection. Mr. McLean concedes that, with respect to the teenagers, "to be perfectly honest with you, they could be considered as W-2 employees."

The other four video workers were at the "Metropolitan" location. It is a free-standing building. They worked in the back where there were three desks, a storage area, a refrigerator, and a water cooler. There were phones and computers. They got the names of "lates" and nonreturns from printouts made by petitioner. All the video workers, including those at the Metropolitan location, were paid by the hour. They used petitioner's pencils, calculators, and telephones, and all

the expenses of collection were paid by petitioner. The six video workers had to sign in and out of work and had assigned places of work in Mr. McLean's office and at "the warehouse area".

For videos that were up to 3 days late, the "regular employees" would call the customer. After that, the four collection people would call. If there was no response, they would send a letter by regular mail. Petitioner paid the postage. If after the first mailing there was no answer, the video workers sent a letter by certified mail, the postage for which was also paid by petitioner. If there was no response 10 days after the mailing of the certified letter, the video workers would prepare an application for a warrant. Mr. McLean reviewed the applications, which he was required to sign. Then his administrative assistant would file them.

Tracey Ashley, one of the two teenagers who worked at the North Moreland location, occasionally worked at Mr. McLean's location with one of three video workers from the Metropolitan location, Felicia Reed, Eric Patrick, or Andrea Trent. When one of them worked at North Moreland, he did the same kind of work Tracey Ashley was doing, regular video store employee duties.

According to Mr. McLean, he treated the video workers as contractors because "They could have used their own supplies, utilities or whatever." He added the pay for his three employees

with that of the six video workers to come up with the deduction for "wages" on Schedule C totaling $60,706. The amount deducted for "contractual services" pertained to amounts expended for both inside and outside maintenance at the two video store locations.

OPINION

Employees or Independent Contractors

Chapter 21 of subtitle C of the Internal Revenue Code imposes the FICA tax, and chapter 23 of subtitle C of the Internal Revenue Code imposes the FUTA tax.[3] As applicable to the facts of this case, the term "employee" means an individual who under the usual common law rules has the status of employee. Secs. 3121(d), 3306(i); Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992); Weber v. Commissioner, 103 T.C. 378, 386 (1994), affd. 60 F.3d 1104 (4th Cir. 1995); Profl. & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988).

Factors that are relevant in determining the substance of an employment relationship include: (1) The degree of control exercised by the principal over the details of the work; (2) the worker's investment in the facilities used in his or her work; (3) the worker's opportunity for profit or loss; (4) the permanency of the relationship between the parties; (5) the

---

[3] Because sec. 7491 applies only to taxes imposed by subtit. A or B, it is inapplicable in this case.

principal's right of discharge; (6) whether the work performed is an integral part of the principal's regular business; (7) the relationship the parties believe they are creating; and (8) the provision, if any, of employee benefits. NLRB v. United Ins. Co. of Am., 390 U.S. 254, 258 (1968); United States v. Silk, 331 U.S. 704, 716 (1947); Weber v. Commissioner, supra at 387; Profl. & Executive Leasing, Inc. v. Commissioner, supra at 232; see also sec. 31.3121(d)-(1)(c)(2), Employment Tax Regs. (setting forth criteria for identifying employees under the common law rules).

No single factor is dispositive; the Court must assess and weigh all incidents of the relationship. Nationwide Mut. Ins. Co. v. Darden, supra at 324. The factors are not weighted equally; they are weighted according to their significance in the particular case. Aymes v. Bonelli, 980 F.2d 857, 861 (2d Cir. 1992).

While all of the above factors are important, the "right-to-control test" is the "master test" in determining the nature of a working relationship. Matthews v. Commissioner, 92 T.C. 351, 361 (1989), affd. 907 F.2d 1173 (D.C. Cir. 1990). Both the control exercised by the alleged employer and the degree to which the alleged employer may intervene to impose control must be examined. Radio City Music Hall Corp. v. United States, 135 F.2d 715, 717 (2d Cir. 1943); deTorres v. Commissioner, T.C. Memo. 1993-161. "[N]o actual control need be exercised, as long as the

employer has the right to control." <u>Profl. & Executive Leasing, Inc. v. Commissioner</u>, 862 F.2d at 753.  In order for an employer to retain the requisite control over the details of an employee's work, the employer need not direct each step taken by the employee.  <u>Profl. & Executive Leasing, Inc. v. Commissioner</u>, 89 T.C. at 234; <u>Gierek v. Commissioner</u>, T.C. Memo. 1993-642.  The employer need not set the employee's hours or supervise every detail of the work environment to control the employee.  <u>Gen. Inv. Corp. v. United States</u>, 823 F.2d 337, 342 (9th Cir. 1987).

Two of the six video workers at issue here, Tracey Ashley and Eric Patrick, were teenagers who Mr. McLean testified were "employees that worked" after school about 10 hours a week at the North Moreland location.  They were paid by the hour and performed assigned duties at the place of business.  They were required to sign into and out from work.  Mr. McLean testified that their primary function was not collection and admitted that, "to be perfectly honest with you, they could be considered as W-2 employees."  On the basis of the evidence in the record, the Court concludes that Tracey Ashley and Eric Patrick were employees of petitioner.

The other four video workers worked mainly at the Metropolitan location and primarily attempted to collect petitioner's "lates".  They, too, were paid by the hour and were required to sign in and out.  Petitioner supplied all the

necessary supplies and equipment for them to perform their duties. It paid all expenses required to attempt to collect the lates. Mr. McLean, and to some extent his administrative assistant, supervised the process within which the video workers worked. At least three of the four were sometimes assigned to work at the North Moreland location to perform duties the same as or similar to those of the two teenage employees working at that location.

In this case the Court is satisfied that petitioner had the authority to exercise, and did exercise, sufficient control over the video workers to support a finding that it was their employer. See Potter v. Commissioner, T.C. Memo. 1994-356; Bilenas v. Commissioner, T.C. Memo. 1983-661. In addition, the Court finds that: (1) The investment in the facilities used in the work of the video workers was made by petitioner; (2) the pay of the video workers was fixed, thereby eliminating the opportunity for "profit" or loss; (3) the work performed by the video workers was an integral part of petitioner's business; and (4) petitioner considered them employees. Indeed, Mr. McLean's testimony indicates that because of his prior bad experiences with outside contractors his intent at the outset was to hire employees to collect the "lates".

Accordingly, the Court finds that respondent's determination as to the classification of the workers in this case as employees is correct.

Section 530

Even though the Court finds that the six video workers were employees, section 530 will relieve petitioner of employment tax liability for the periods at issue if the requirements of section 530 are satisfied.  If petitioner shows that it:  (1) Has not treated any of the video workers as employees for any period; and (2) has filed all Federal tax returns (including information returns) with respect to each video worker on a basis consistent with its treatment of each individual as not being an employee, petitioner will prevail unless it has no reasonable basis for not treating the video workers as employees.  Revenue Act of 1978, sec. 530(a)(1), (3), 92 Stat. 2885, 2886.

Respondent concedes that Forms 1099 were timely filed for each of the six video workers under consideration.  He alleges, however, that the video workers performed substantially the same duties as petitioner's three full-time employees, yet were treated as independent contractors.  He also alleges that petitioner has failed to establish that it had any reasonable basis to treat the video workers as independent contractors.  The Court will consider first whether petitioner has failed to

establish that it had any reasonable basis to treat the six workers as independent contractors.

The statute provides a safe harbor so that a taxpayer shall be treated as having a reasonable basis for not treating an individual as an employee if he "reasonably relied" on: (1) Judicial precedent, published rulings, or technical advice or a letter ruling issued to the taxpayer; (2) past audit treatment of positions similar to those held by the individuals under consideration; or (3) longstanding practice in the taxpayer's industry.

A taxpayer who fails to dock his ship in any of the safe harbors is still entitled to relief if he can demonstrate, in some other manner, a reasonable basis for not treating the individual as an employee. Veterinary Surgical Consultants, P.C. v. Commissioner, 117 T.C. 141, 147 (2001), affd. sub nom. Yeagle Drywall Co. v. Commissioner, ___ Fed. Appx. ___ (3d Cir., Dec. 18, 2002). Although the reasonable basis requirement is to be construed liberally in favor of taxpayers, it is nevertheless petitioner's burden to show by a preponderance of the evidence that it had a reasonable basis for its treatment of the video workers as other than employees.[4] Springfield v. United States,

---

[4] Sec. 530(e)(4) places the burden of proof on the Secretary with respect to certain aspects of sec. 530. Sec. 530(e)(4) applies to disputes involving periods after Dec. 31, 1996, and therefore does not apply to this case. Small Business

(continued...)

88 F.3d 750, 753 (9th Cir. 1996); <u>Boles Trucking, Inc. v. United States</u>, 77 F.3d 236 (8th Cir. 1996).

The only reasons articulated by Mr. McLean for treating the six video workers as independent contractors are that "they could have used their own supplies, utilities or whatever" and that he had an agreement with them that they would "pay their own taxes". In the context of the facts of this case, these are not reasonable bases on which to rely for the treatment of the video workers as independent contractors instead of employees. Hence petitioner is not entitled to relief under section 530, and the Court need not address respondent's allegation that the video workers performed substantially the same duties as petitioner's three full-time employees.

<u>Amount of Taxes Due</u>

Because we have concluded that the six video workers were petitioner's employees, it follows that petitioner is liable for FICA and withholding taxes of $1,085.36 and FUTA taxes of $387 for 1996.

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[4](...continued)
Job Protection Act of 1996, Pub. L. 104-188, sec. 1122(b)(3), 110 Stat. 1767.