**DEJA VU ENTERTAINMENT ENTERPRISES OF MINNESOTA, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 3–96–1078.

United States District Court,
D. Minnesota,
Third Division.

Feb. 13, 1998.

Paul D. Peterson, Peterson Law Office, Woodbury, MN, Robert E. Miller, for Plaintiff.

---

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the Court upon Plaintiff, Deja Vu Entertainment Enterprises of Minnesota, Inc.'s ("Deja Vu") Motion for Summary Judgment. For the following reasons, the Court grants Plaintiff's motion.

## BACKGROUND

Plaintiff Deja Vu operates an adult entertainment club in downtown Minneapolis, Minnesota. In 1994, the Internal Revenue Service ("IRS") contended that Deja Vu owed employment taxes for the years 1990 to 1992. The IRS asserted that the entertainers who performed at Deja Vu were "employees," and that Deja Vu had never paid any employment taxes for those employees. Deja Vu paid the assessment, and then initiated the present lawsuit, asserting that its entertainers were not employees, but were instead independent contractors.

Deja Vu was organized as a Minnesota corporation in 1990. In July of that year, the Deja Vu nightclub commenced operations. Peter Hafiz, the president of Deja Vu, has been in the adult entertainment business for about twenty years. He is responsible for the performers at the nightclub. Based on his past experience in the adult entertainment industry, Hafiz requires the performers to enter into contracts whereby they agree to pay a stage rental fee for each two-dance set to which they perform and for each individual dance they perform. The contracts specifically disavow any employer-employee relationship and require entertainers to be responsible for their own income. Additionally, the contracts provide that Deja Vu can impose any rules and regulations as necessary.

Scheduling for the club is done on a weekly basis by asking entertainers which dates they are available to perform. Entertainers are required to notify the club if they cannot perform on a scheduled date or they will be charged the contract stage rental fee. Each performer takes a turn appearing individually on stage for a two-song set. When the performers are not on stage, they are expected to circulate among customers and solicit individual dances. The club manager keeps track of the number of individual dances which the entertainers perform and calculates the rental fee due for each entertainer.

The performers' income consists entirely of money paid to them by customers. Deja Vu points out that the club never touches any of

the money paid by customers. However, the prices for the individual dances are set by Deja Vu, and the performers are expected to collect this amount from the customer. At the end of each performance date, the performers must pay their contract rent to Deja Vu. Deja Vu reports these payments as rental income on its federal income tax return. Additionally, Deja Vu may impose various fees or fines on the performers for violations of rules.

Before the Deja Vu nightclub began operations in July 1990, Hafiz had Lee Klein, an attorney, review the club's arrangements with its performers. After researching the federal tax law and reviewing the club's operations, Klein drafted the Dancer Performance Lease. Klein admitted that he had never seen a similar document used in the adult entertainment industry. However, Klein concluded that the performer's were properly characterized as independent contractors and that Deja Vu was not required to file any Forms 1099 unless the club made payments directly to the performers. This advice was confirmed by David Shindel, Deja Vu's outside accountant. According to Deja Vu, both Klein and Shindel had knowledge that the adult entertainment industry typically considered its performers to be non-employees.

In 1991, the IRS conducted an audit of Deja Vu, Inc., the 75% shareholder of Plaintiff Deja Vu. Deja Vu, Inc. operates a similar club in Ohio. The Ohio club also considers its performers to be independent contractors. Following the completion of the audit, the IRS notified Deja Vu, Inc. of some deficiencies, but did not make any adjustments concerning the club's treatment of performers as non-employees. Deja Vu notes that the IRS Revenue Agent admitted that this is a common practice in the adult entertainment industry. Deja Vu has consistently filed its federal tax returns each year, and has never treated its entertainers as employees. However, in 1994, the IRS asserted that Deja Vu's entertainers were employees and that Deja Vu was subject to employment taxes.

## DISCUSSION

Deja Vu contends that the IRS erred in assessing employment taxes on the club. In support of its motion for summary judgment, Deja Vu makes two arguments. First, Deja Vu asserts that regardless of whether this Court finds that the entertainers are employees, Deja Vu is entitled to statutory protection under Section 530 of the Internal Revenue Code. Alternatively, Deja Vu contends that it has never made any payments to its entertainers; therefore, it is not responsible for withholding federal employment taxes. In addition, Deja Vu requests attorney's fees in light of the fact that it believes the IRS's position to be unjustified. The Court now turns to address these arguments.

### A. Standard of Review

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.*, 980 F.2d 1217, 1219–20 (8th Cir.1992). The court determines materiality from the substantive law governing the claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material. *See id.* A material fact dispute is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. *See id.* at 248–49.

### B. Section 530

■ Section 530 of the Revenue Act of 1978 provides in pertinent part:

(a) Termination of certain employment tax liability.—

(1) In general.—If—

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and

(B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the tax-

payer's treatment of such individual as not being an employee, then for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

26 U.S.C. § 3401 note. Congress enacted this section to alleviate the "overly zealous pursuit and assessment of taxes and penalties against employers who had, in good faith, misclassified its employees as independent contractors." *Boles Trucking, Inc. v. United States*, 77 F.3d 236, 239 (8th Cir.1996) (citing *In Re Rasbury*, 130 B.R. 990 (Bankr. N.D.Ala.1991)). Deja Vu's entitlement to the protection afforded by this section turns on whether Deja Vu had a reasonable basis for treating its performers as independent contractors. This reasonable basis requirement is to be construed liberally in favor of taxpayers. *See id.* at 240 (citing H.R.Rep. No. 95–1748, at 5 (1978)).

Before Deja Vu may avail itself of the protections of section 530, it must first meet several threshold requirements. First, Deja Vu must have previously treated its performers as independent contractors. Second, Deja Vu must have filed all required federal tax returns. Third, Deja Vu must have had a reasonable basis for treating its performers as non-employees. The first requirement is easily met, because Deja Vu has never treated its performers as employees. This fact has been admitted by the IRS. (*See* Pl.'s Ex. 5 at 52–53.) However, the government asserts that the second and third requirements have not been satisfied.

### 1. Filing of Tax Returns

Deja Vu asserts that it has filed all federal tax returns which were required by law. In contrast, the government contends that Deja Vu failed to file required Forms 1099 for payments made to performers. Although it is not contested that Deja Vu did not routinely physically made a "payment" to its performers, the government contends that because the performers must account to the club manager for the number of dances performed, and then pay rent based on that

accounting, Deja Vu is essentially making a "payment" within the meaning of section 6041(a) of the Internal Revenue Code. *See* 26 U.S.C. § 6041(a) (stating that "[a]ll persons engaged in a trade or business and making payments in the course of such trade or business to another person ... shall render a true and accurate return"). The government theorizes that when the customers pay the performers, this money really belongs to Deja Vu, and when the performers pay their rental fee to the club, the amount they are allowed to keep is a "payment" by the club. The Court finds this interpretation weak and controverted.

Black's Law Dictionary defines "payment" as "a delivery of money or its equivalent." *Black's Law Dictionary* 1129 (6th ed.1990). Additionally, most courts addressing the issue of whether a payment was made for the purposes of issuing Forms 1099 focus on the amount of control the alleged payor had over the money. For example, the court in *Manchester Music Co. v. United States*, 733 F.Supp. 473, 482 (D.N.H.1990), held that "payment occurs with the transfer of possession, dominion, or control over money or its equivalent from a person who up to that point had been exercising such prerogatives over the same to another who is due the funds." *Manchester Music* involved an owner of video games who would place the games in a proprietor's business place. The issue was whether a payment was made when two businesses divvied up the proceeds from video games. At an agreed upon time, the owner would open the coinbox in the presence of the proprietor. The two would then split the proceeds according to the terms of a previously signed contract. The court held that a payment could not have occurred unless the entire proceeds constituted income to the "paying" party, *see id.* at 479, and that receipts could only be income to the extent that a party received and controlled the funds at issue, *see id.* at 481. Accordingly, the court reasoned that no payment had occurred because each party had a contractual right to his share of the proceeds. *See id.* at 481–82. Because each party's share constituted income to that party, the "transfer" of the other portion could not constitute a "payment." *See id.* at 482.

Other courts have also decided this issue by focusing on the amount of control a party has over the funds. For example, in *JJR, Inc. v. United States*, 950 F.Supp. 1037 (W.D.Wash.1997), a case strikingly similar to the present case, the court held that customer payments to adult entertainers did not constitute income to a nightclub owner. The *JJR* court reasoned that customers' cash payments were the source of the performers' incomes, not payments from the taxpayer. *See id.* at 1045. Additionally, the court noted that the performers were not required to account to the club owner for their incomes, nor did they share their incomes with the taxpayer. *See id.*

The government argues that the above cases do not support Deja Vu's position because Deja Vu, unlike the taxpayers in the cited cases, exercises dominion and control over the relevant funds. Essentially, the government reasons that by keeping track of the number of dances the entertainers perform, Deja Vu forces the performers to account to the club for their income. This required accounting is a form of control, according to the government, and when Deja Vu allows the performers to keep a portion of their customer payments, this constitutes a payment.

■ This Court finds the government's argument unavailing. The government's theory requires the Court to twist the facts to find a payment where none occurred. While the release of control over funds could theoretically constitute a payment of those funds, no such release occurred here. The only funds over which Deja Vu arguably had control were those required to be paid as rent under the contract, and it is undisputed that Deja Vu never paid out any of those funds after receiving them. Moreover, the mere fact that Deja Vu kept track of the number of dances done by each performer does not establish that Deja Vu controlled the performers' entire incomes. This "tracking" was necessary to fulfill the rental terms of the contract, which required that the performers pay the club a rental fee for each individual dance performed. Therefore, this Court holds that because Deja Vu never controlled its performers' incomes, and because Deja Vu never made a "payment" of any funds to its performers, the club was not required to file Forms 1099.

## 2. Reasonable Basis

Because Deja Vu has met the prerequisites of section 530, this Court must next determine whether Deja Vu has a reasonable basis for treating its performers as independent contractors. Section 530 provides three possible "safe havens" upon which Deja Vu may rely for not treating an individual as an employee. The provision states as follows:

(2) For the purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:

(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

(B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

26 U.S.C. § 3401 note. Deja Vu asserts that it qualifies for each of the above three provisions. This Court agrees, and finds that Deja Vu is not liable for the employment taxes assessed upon it. Additionally, it is important to note that while the government devotes a large portion of its brief to whether the performers are actually employees for the purposes of federal employment taxes, this point is irrelevant. The issue is not the actual status of the performers, but whether Deja Vu had a reasonable basis for treating the performers as it did. Finally, the Court is not persuaded by the government's assertions that Deja Vu acted in bad faith. If a reasonable basis existed to treat the performers as independent contractors, Deja Vu's motive is irrelevant. The Court now turns to evaluate the three bases upon which Deja Vu relies for its reasonable basis contention.

First, the adult entertainment industry routinely characterizes performers as independent contractors rather than employees. Evidence of this industry practice satisfies section 530(2)(C). Two other district courts have granted section 530 relief to similar adult entertainment businesses based at least in part upon industry practice. *See JJR*, 950 F.Supp. at 1044–45; *Marlar, Inc. v. United States*, 934 F.Supp. 1204, 1209–10 (W.D.Wash.1996). Moreover, Hafiz, the president of Deja Vu, offered evidence showing that, in his experience, most adult nightclubs operate in a like manner. (*See* Hafiz Dep. at 14–15; Hafiz Aff. ¶¶ 9–10, 14, 17–18.) Hafiz came to this conclusion after working in the industry for several years, and after traveling to various adult entertainment clubs before opening Deja Vu. (*See id.*) Lee Klein, Deja Vu's attorney, and David Shindel, Deja Vu's accountant, have also found that, in the adult entertainment business, performers are routinely treated as non-employees. (*See* Klein Aff. ¶¶ 6–8; Shindel Aff. ¶¶ 4, 9–11.) The government offered no proof to contradict the existence of the above industry practice, which operates to create a conclusive presumption that Deja Vu had a reasonable basis for treating performers as independent contractors. *See General Inv. Corp. v. United States*, 823 F.2d 337, 339–40 (9th Cir.1987). Therefore, this Court finds that, based on industry practice, Deja Vu was reasonable in classifying the club's performers as independent contractors.

In addition to industry practice, Deja Vu relied upon technical advice provided to it by its attorney and its accountant when it classified its performers. Klein, Deja Vu's attorney, had knowledge of the adult entertainment industry based on other similar clients whom he represents. (*See* Klein Aff. ¶¶ 2, 4–9.) In addition, Klein conducted his own analysis of the issue after researching relevant federal and state law. (*See id.* ¶ 10.) Klein thus advised Deja Vu that it would be proper to characterize its performers as independent contractors, and drew up a contract to that effect. (*See id.* ¶ 12.) Similarly, Deja Vu's accountant, Shindel, also has experience in the adult entertainment industry. (*See* Shindel Aff. ¶¶ 2–6.) Upon reviewing

Deja Vu's operations, Shindel concluded that it was proper to treat the nightclub's performers as independent contractors. (*See id.* ¶ 11.) Both Klein and Shindel based their opinions on valid experience and observations. Accordingly, Deja Vu was reasonable in accepting this technical advice and treating its performers as non-employees.

Finally, Deja Vu also relied on a past audit of Deja Vu, Inc. which found no violations resulting from the corporation's treatment of its performers as independent contractors. Deja Vu, Inc. is Deja Vu's parent company in Toledo, Ohio. In 1991, the IRS audited Deja Vu, Inc., and investigated the corporation's classification of performers as independent contractors. While IRS personnel specialists were utilized, they found no violations and did not require modification of the classifications. (*See* Shindel Aff. ¶ 10; Shindel Dep. at 56; Krontz Aff. ¶ 9.) Deja Vu was reasonable in relying on the results of this audit to support classification of the club's performers as non-employees.

In summary, Deja Vu had severable reasonable bases for treating its performers as independent contractors. There is uncontroverted evidence that it is commonplace in the industry for performers to be treated as non-employees. Further, Deja Vu's attorney's and accountant's advice with respect to the classification of the performers was reasonable. Moreover, the previous audit of Deja Vu's parent corporation provided a third reasonable basis upon which Deja Vu was entitled to rely.

Rather than refute the above assertions, the government contends that Deja Vu acted in bad faith and is thus not entitled to the protection of section 530. (*See* Br. Opp'n at 17–22.) The government contends that Deja Vu's lease agreements with its performers are mere shams to improperly avoid payment of employment taxes. (*See id.* at 17.) However, this Court has already found that Deja Vu was reasonable in its classification of its performers as non-employees. If Deja Vu's action is reasonable, it is difficult to ascertain how it could simultaneously be in bad faith.

Moreover, the government's argument is based on its assessment that Deja Vu's performers fit the definition of "employee," as

defined in 26 U.S.C. § 3121(d) ("any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee"). The IRS has promulgated regulations which indicate that an employer-employee relationship exists when the alleged employer "has the right to control and direct the individual who performs the services." Treas. Reg. § 31.3121(d)–1(c)(2). Additionally, an independent contractor is defined as someone who "is subject to the control . . . of another merely as to the result to be accomplished . . . and not as to the means and methods for accomplishing the result." *Id.* Clearly, the focus of these definitions is on the amount of control exercised over the worker.

■ Although Deja Vu exercises some control over its performers, the amount is minimal. First, as discussed earlier, Deja Vu's practice of tracking the number of individual dances done by each performer is necessary to effectuate the terms of the contract, which calls for a per-dance rental fee. Additionally, the performers are allowed to choose their own performance dates for each weekly schedule. Requiring prior notification for cancellations is only logical since Deja Vu's goal is to provide a steady stream of dancing in the club. Further, performers may work for other adult entertainment clubs if they choose. Finally, because Deja Vu has never made any payments to its performers, it was reasonable in characterizing them as non-employees. Therefore, this Court holds that Deja Vu had a reasonable basis for treating its performers as independent contractors, and is entitled to the protection afforded by section 530.

### C. Payment of Wages

As an alternative basis for summary judgment, Deja Vu argues that because it never paid any wages to its performers, it cannot be liable for employment taxes. However, this Court has already determined that summary judgment is appropriate based on section 530. Thus, the Court declines to decide this issue.

### D. Attorney's Fees

■ Under 26 U.S.C. § 7430, the United States must pay attorneys' fees for the pre-vailing party if the United States's position in assessing a tax was not substantially justified. *See* 26 U.S.C. § 7430. The burden of proof lies with the government to prove that its position was substantially justified. *See id.* § 7430(c)(4)(B)(i) ("A party shall not be treated as the prevailing party in a proceeding to which subsection (a) applies if the United States establishes that the position of the United States in the proceedings was substantially justified."). Although this Court found the government's position erroneous in the present case, it cannot say that the position was not substantially justified. The government was aware of previous cases finding performers in adult entertainment clubs to be independent contractors. However, the government was justified in attempting to point out differences between Deja Vu's operations as compared with these cases. Although this Court found those "differences" to be immaterial, this Court is not prepared to award attorneys' fees to Deja Vu. Therefore, Deja Vu's request for attorneys' fees under 26 U.S.C. § 7430 is denied.

### CONCLUSION

Deja Vu is entitled to the protection of section 530 of the Internal Revenue Code because it has satisfied each of the prerequisites of the statute. First, Deja Vu has never treated its performers as employees. Second, Forms 1099 were not required to be filed because Deja Vu never made any payments to its performers. Finally, Deja Vu's characterization of its performers as independent contractors was based on several reasonable factors. Deja Vu cited a widespread industry practice of treating similar performers as non-employees. Additionally, Deja Vu justifiably relied on the technical advice of its attorney and accountant. Finally, the prior audit of Deja Vu's parent company, which found no violations in the classification of performers, provided a third reasonable basis for Deja Vu's decision. Therefore, Deja Vu's motion for summary judgment based on section 530 is granted.

Because this Court's decision is based on section 530, it is unnecessary to reach Deja Vu's alternative basis for its summary judgment motion. Accordingly, this Court declines to decide whether Deja Vu paid wages to its performers. Additionally, although the

government's position in this case was wrong, this Court does not believe that position was unjustified. Thus, Deja Vu's request for attorneys' fees is denied.

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion for Summary Disposition (Clerk Doc. No. 32) is GRANTED;

2. All assessments made by the IRS against Plaintiff for employment taxes shall be abated; and

3. Defendant shall refund all amounts paid by Plaintiff to the IRS for the employment taxes at issue in this action.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**