**XCEL ENERGY, INC., a Minnesota corporation, individually and on behalf of its affiliated companies, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 04–1449 (PJS/RLE).**

United States District Court,
D. Minnesota.

July 19, 2006.

David E. Jacobson, Thelen Reid & Priest LLP, Washington, DC, James L. Altman, Xcel Energy, James E. Dorsey, Jay M. Quam, Steven Z. Kaplan, Fredrikson & Byron, PA, Minneapolis, MN, for Plaintiff.

Andrew T. Pribe, Gregory E. Van Hoey, U.S. Dept. of Justice, Tax Division, Washington, DC, for Defendant.

## ORDER

ERICKSON, Chief United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Motion of the Plaintiff Xcel Energy Inc. ("Xcel") to compel the Government to produce an amended privilege log, and/or to produce documents not properly protected by the deliberative process privilege, and to require more complete responses to Xcel's Third Request for Admissions. A Hearing on the Motion was conducted on July 7, 2006, at which time, Xcel appeared by Jay M. Quam and James E. Dorsey, Esqs., and the Government appeared by Andrew T. Pribe, Trial Attorney, Tax Division, United States Department of Justice. For reasons which follow, we grant, in part, Xcel's Motion to Compel.

### II. *Discussion*

This action arises out of corporate-owned, whole life insurance policies, that Xcel's pre-

decessor, Public Service Company of Colorado, purchased on behalf of some two thousand plus (2000+) of its employees in the mid–1980s. See generally, *Xcel Energy Inc. v. United States,* 2005 WL 2577112 at *1–3 (D.Minn., October 12, 2005). Xcel's predecessor claimed certain corporate interest deductions owing to these insurance policies, which the Government has disallowed. *Id.* The Government's discovery responses, which are here at issue, relate to the propriety of Xcel's claimed interest deductions. Since they involve somewhat different considerations, we address each aspect of Xcel's Motion separately.

A. *Xcel's Motion to Compel the Government to Produce an Amended Privilege Log, and/or to Produce Documents to Which the Deliberative Process Privilege Does Not Properly Attach.*

Xcel requested production of documents, which relate to the Government's decision to disallow Xcel's interest expense arising from the insurance policies in question, and the Government produced some or all of those documents, but only after substantial redacting, together with a privilege log which, in a conclusory fashion, invoked the deliberative process privilege. Xcel was satisfied with neither the Government's redactions, nor the sufficiency of the Government's privilege log.[1]

Rule 26(b)(5), Federal Rules of Civil Procedure, addresses the requirements of a privilege log, as follows:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall disclose the nature of the documents, communications, or things not produced or disclosed in a manner without

revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

As the Advisory Committee Notes for the 1993 Amendments further explain:

> The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, person, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories. A party can seek relief through protective order under subdivision (c) if compliance with the requirement for providing this information would be an unreasonable burden. In rare circumstances some of the pertinent information affecting applicability of the claim, such as the identity of the client, may itself be privileged: the rule provides that such information need not be divulged.

Notably, "[t]he obligation to provide pertinent information concerning withheld privileged materials applies only to items 'otherwise discoverable.'" *Id.* Here, without reaching the question of whether the Government's privilege log was sufficient, we conclude that the requested information is not "otherwise discoverable."

■ Under the governing law of this Circuit, "a deficiency [tax] assessment may be sustained upon any legal ground supporting it, even though the Commissioner did not rely thereon when the assessment was made," so long as "the assessment is right on any theory it must be sustained." *Blansett v. United States,* 283 F.2d 474, 478 (8th Cir.1960), citing *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937); *Martin v. United States,* 411 F.2d

---

1. Both in its responsive papers, and at the Hearing on the Motion, the Government complained that Xcel had not exhausted the "meet and confer" requirement that is imposed by the applicable Federal Rules of Civil Procedure, and the Local Rules of this Court. While we are satisfied that at least some of the discovery in dispute was not subject to a responsible "meet and confer," we are persuaded that remanding the matter to the parties to accomplish that purpose would be futile, and we benignly overlook Xcel's noncompliance with the applicable Rules. We would not counsel Xcel to follow the same approach in the future and, in fact, we subsequently detail the requisites of any future "meet and confer," if one is required.

1164, 1167 (1969). The same issue which faces the Court, here, confronted the Court in *Mayes v. United States,* 1986 WL 10093 (W.D.Mo., June 12, 1986). There, the plaintiffs in a tax refund suit sought to discover an internal agency memorandum, which was prepared by an Internal Revenue Service ("IRS") agent during the administrative appeal of the plaintiffs' claims. Finding the memorandum irrelevant, the Court denied the discovery, reasoning as follows:

> The legal and factual analysis undertaken by the IRS is of no concern to the court; instead, the issues are subject to de novo review. * * * In other words, the court is to "place itself in the shoes of the commissioner" and apply the law to the facts presented. * * * Even if an assessment was made on erroneous grounds, it must be upheld if it is appropriate on any theory.

> * * *

> Similar reasoning appears to be appropriate in this case. The court will not be reviewing the analysis followed by the IRS employee or the reasons why the IRS made the assessment. As the cases cited earlier indicate, it will be of no moment whether the IRS employee was correct or not in his interpretation of the law at the administrative stage. The court's determination of plaintiff's correct tax liability will be made by examining the deduction in question in light of the underlying facts and the applicable law. Given these circumstances, the court concludes that the portion of the supporting statement comprising the IRS employee's legal analysis is not relevant to any of the issues herein and is thus outside the scope of discovery.

*Mayes v. United States,* supra at *2–3 [citations omitted].

At the time of the Hearing, we inquired of Xcel as to the relevance it perceived in the documents at issue. Without taking exception to the foregoing analysis, counsel for Xcel advised that the analysis of the IRS agents would be relevant to Xcel's defense to a claim, by the Government, for the imposition of a penalty pursuant to Title 26 U.S.C. §§ 6662(a), and 6662(b)(2), if Xcel is determined to have committed a "substantial understatement of income tax." We find that basis of relevance unfounded.

■ We acknowledge, as Xcel urges, that the Internal Revenue Code does afford taxpayers an exception to the imposition of such penalties "if there is or was substantial authority for such treatment." *Title 26 U.S.C. § 6662(d)(2)(B)(i).* The standard for determining whether the taxpayer has substantial authority for its treatment is established by Treasury Regulation § 1.6662–4(d)(2), which provides as follows:

> The substantial authority standard is an objective standard involving an analysis of the law and application of the law to the relevant facts.

"For there to be substantial authority, the 'weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary treatment.'" *In re CM Holdings, Inc.,* 254 B.R. 578, 647 (D.Del.2000), aff'd, 301 F.3d 96 (3rd Cir.2002). "Substantial authority" must be obtained from a listing of authorities prescribed by 26 C.F.R. § 1.6662–4(d)(3)(iii) and, "[s]pecifically excluded from the substantial authority inquiry are: '[c]onclusions reached in treatises, legal periodicals, legal opinions or opinions rendered by tax professionals.'" *Id.* at 648, quoting *26 C.F.R. § 1.6662–4(d)(3)(ii),* and citing *Antonides v. Comm'r,* 893 F.2d 656, 660 (4th Cir.1990). We have found no authority for the proposition that the internal ruminations of IRS agents, during an administrative consideration of the taxpayer's tax liability, could serve, however slightly, as the "substantial authority" required by Section 6662(d)(2)(B)(i), and Xcel has drawn none to our attention.

■ Even if the documents being sought by Xcel were somehow relevant, they would also appear to be subject to the governmental deliberative process privilege. Albeit in the context of the Freedom of Information Act, the Supreme Court has explained that "[t]he deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to

enhance 'the quality of agency decisions,' * * * by protecting open and frank discussion among those who make them within the Government * * *." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001), citing and quoting, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); see also, *State of Missouri v. United States Army Corps of Engineers*, 147 F.3d 708, 710 (8th Cir. 1998)("The purpose of the deliberative process privilege is to allow agencies freely to explore alternative avenues of action and to engage in internal debates without fear of public scrutiny."), citing *Assembly of State of Cal. v. United States Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir.1992).

 Of course, the deliberative process privilege is qualified, and not absolute. See, *In re Prempro Products Liability Litigation*, 2006 WL 751299 at *1 (E.D.Ark., March 20, 2006), citing *FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir.1984); see also, *United States v. Miracle Recreation Equipment Co.*, 118 F.R.D. 100, 107–108 (S.D.Iowa 1987). "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure" and, "[a]mong the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussions regarding contemplated policies and decisions." *In re Prempro Products Liability Litigation*, supra at *2, quoting *FTC v. Warner Communications, Inc.*, supra at 1161. None of those factors weigh in favor of invading the privilege here, as the information contained in the documents is irrelevant; "substantial authority," as required in order to be excepted from an IRS penalty, is available in other sources; here, the Government is being sued on the basis of the IRS Commissioner's ruling; and we cannot envision a greater chill on deliberative thinking, internally by IRS employees, than the opening of that thought process to discovery.

Given the volume of documents at issue, we rely on the representations of counsel for the Government, that the documents identified in the privilege log are intra-agency, and are "both predecisional and deliberative." *State of Missouri v. United States Army Corps of Engineers*, supra at 710, citing *Assembly of State of Cal. v. United States Dep't of Commerce*, supra at 920–21. Should Xcel challenge those representations, which we do not understand to be the case here, then we would charge counsel with an obligation to "meet and confer," as we detailed at the Hearing, to canvass each of the documents at issue to assure that each properly falls within the category we have determined to be irrelevant, and facially subject to a qualified privilege.[2]

Accordingly, on the Record presented, we deny Xcel's Motion to Compel the Government to produce an Amended Privilege Log or, alternatively, to produce the documents at issue.

### B. Xcel's Motion to Compel More Complete Responses to Its Third Request for Admissions.

 1. *Standard of Review.* "The quintessential function of Requests for Admissions is to allow the narrowing of issues, to permit facilitation in presenting cases to the factfinder and, at a minimum, to provide notification as to those facts, or opinions, that remain in dispute." *Lakehead Pipe Line Co.*

---

2. As we explained at the Hearing, having participated in complex litigation for over thirty-five (35) years, we have found that the only means of providing the detail necessary to a determination concerning the privileged status of a particular document, without expensive and voluminous documentation, is to require the party claiming the privilege to sit on one side of a table, with the challenging party on the other, in order to allow the claiming party to hold the document up, with its back facing the challenging party, so the claiming party can detail the document's author, date, general subject matter, the recipients of the document, and the specific reasons why the document is privileged. As the Advisory Committee Notes for the 1993 Amendment of Rule 26(b)(5) reflect, "[p]roviding information pertinent to the applicability of the privilege or protection should reduce the need for in camera examination of the documents."

v. American Home Assurance Co., 177 F.R.D. 454, 457–58 (D.Minn.1997); see also, *Schwarz Pharma, Inc. v. Paddock Laboratories, Inc.*, 429 F.Supp.2d 1116, 1129 (D.Minn. 2006)("The Advisory Committee Notes to Rule 36 state '[r]ule 36 serves two vital purposes, both of which are designed to reduce trial time,'" as "'[a]dmissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be.'").

As a consequence, while "Requests for Admissions are not a discovery device," *Lakehead Pipe Line Co. v. American Home Assurance Co.*, supra at 458, they serve an integral part of the Pretrial process by focusing the contested aspects of the litigation. As here pertinent, Rule 36(a), Federal Rules of Civil Procedure, provides as follows:

A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request.

\* \* \*

■ If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or only deny a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder. \* \* \* A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; the party may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons why the party cannot admit or deny.

"When passing on a motion to determine the sufficiency of answers or objections, the court obviously must consider the phraseology of the requests as carefully as that of the answers or objections." *Thalheim v. Eberheim*, 124 F.R.D. 34, 35 (D.Conn.1988). "Though qualification may be required where a request contains assertions which are only partially correct, *Flanders v. Claydon*, 115 F.R.D. 70, 72 (D.Mass.1987), a reviewing court should not permit a responding party to undermine the efficacy of the rule by creating disingenuous, hair-splitting distinctions whose unarticulated goal is unfairly to burden an opposing party." *Id.*, citing *Walsh v. Connecticut Mutual Life Ins. Co.*, 26 F.Supp. 566, 573 (E.D.N.Y.1939); see also, *Poole v. Textron*, 192 F.R.D. 494, 499 (D.Md. 2000).

2. *Legal Analysis.* In addressing Xcel's objections to the Government's Responses to Xcel's Requests for Admission, we follow the parties' lead in grouping certain of the Responses in generic categories.

a. *Request for Admission Nos. 1–6, 14, 17, 19, and 31.* In response to each of these Requests, the Government has bifurcated its Response into one for the form of the transaction, and the other for the substance. While, conceivably, such a bifurcation may be required, as currently framed, the Response does not plainly appear to be a denial or an admission. In defense of its approach, the Government underscores that Courts frequently distinguish between the "form" of a transaction, for which favorable tax treatment is sought, and its substance. Therefore, the Government purports to respond to these Requests by what appears to be an implied admission as to form, but a denial as to substance. Although we do not disagree that the "form," and "substance," of the life insurance policies, upon which the contested tax deduction was sought, will necessarily be addressed on its merits, as this case proceeds, the Government's Responses are confusing at best, and coy at worst.

■ We understand that, in support of its approach, the Government relies upon the analysis presented in *Tri–State Hospital Supply Corp. v. United States*, 226 F.R.D. 118, 138 (D.D.C.2005), where the Court ap-

pears to have allowed Responses which seem to argue the legal effect of the factual admissions, since "the government should be able to explain its position and not be bullied into an admission it does not want to make." While we have no quarrel with allowing a qualification of a Response, the qualification must both clear and advanced in good faith. See, *Thalheim v. Eberheim*, supra at 35; *Havenfield Corp. v. H & R Block, Inc.*, 67 F.R.D. 93, 96 (W.D.Mo.1973); see also, *Rule 36(a), Federal Rules of Civil Procedure* ("A denial shall fairly meet the substance of the requested admission, and **when good faith requires** that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder.")[emphasis added].

Here, frankly, as to each of the referenced Requests, we cannot determine whether any of part of the Request is admitted, or if all of the Request is denied, as the Response is inscrutable. As we advised at the time of the Hearing, the Government should not be concerned as to the legal effect of its Response to a Request where, as appears to be the case here, the Requests seek a confirmation of a fact. We can conceive of no "bullying" in requiring the Government to admit so much of a Request as is warranted, and then, as good faith dictates, to deny the rest. If the Requests were seeking an admission as to the legal effect of the requested fact to be admitted, we could understand the Government's concern, but that is not the circumstance with respect to these Requests. Legal jousting, and advocacy, play such a predominate role in the crafting of Interrogatories, and their Answers, that it should not be allowed to infect the laudable purposes of Rule 36 in eliminating issues for which proof is not required, and in narrowing issues where proof is.

Therefore, we direct the Government to Amend its Responses to these Requests so as to clearly respond with an admission, with qualifications, or a denial, with qualifications, and to abandon the "form" and "substance" dichotomy.

█ b. *Request for Admission Nos. 11 and 12.* These Requests seek confirmation that the insurance policies at issue, and certain of their riders, "received all state insurance law regulatory approvals necessary" to insure the employees of Xcel's predecessor. The Government responded by objecting to the relevance of the Request, "because it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible information," and by denying that "regulatory approval is obtained on a case-by-case or individual-by-individual basis," and further denying that Xcel's predecessor provided relevant information as to the "true use and purpose" of the policies.

Once again, we find the Government's Response evasive. We can accept, as the Government posits, that, ordinarily, State law cannot hinder the proper scope and application of the Federal tax laws, but that is not the purport of the Request. Rather, Xcel seeks to establish that the relevant States, whoever they may be, approved the policies in question. If Xcel's predecessor failed to provide information to the State, that would not alter the historic fact that approval was either extended, or it was not, nor would that admission, as requested by Xcel, bind the Government into some concession that State approval verifies the legitimacy of the policies in question for the tax treatment that Xcel seeks. Again, the Government is directed to respond clearly to the Request for Admission with either an admission or a denial, with appropriate, good faith qualifications.

c. *Request for Admission Nos. 15, 16, and 20–22.* We have closely reviewed these Requests, and the Government's Responses, and we find the Responses to be adequate. While the Government's substantive response is not to Xcel's liking, the Government has not only denied the Requests, but has explained its denial. Nothing further is required, and Xcel's Motion to Compel in this respect is denied.

d. *Request for Admission Nos. 27–30, and 32–34.* These Requests pertain to the tax records of entities other than Xcel, and the Government has objected to those Requests as violative of Title 26 U.S.C. § 6103, which requires that the tax returns, and return information, be treated as confidential

unless some specific code provides to the contrary. See, *Stanbury Law Firm v. IRS,* 221 F.3d 1059, 1062 (8th Cir.2000).

We find it sufficient that the tax treatment of third parties is irrelevant to the issues presented in this action, and therefore, we concur in the assessment of Magistrate Judge Franklin L. Noel, who previously denied the functionally equivalent scope of discovery in the context of rejecting Xcel's request to take a deposition, pursuant to Rule 30(b)(6), Federal Rules of Civil Procedure, on generically the same topics as are the subject of these Requests for Admissions. See, *Order,* June 12, 2006, Docket No. 93. Therefore, Xcel's Motion to Compel, as to these Requests, is denied.

NOW, THEREFORE, It is—

ORDERED:

That the Motion to Compel [Docket No. 98] of the Plaintiff Xcel Energy, Inc., is granted in part, as more fully detailed in the text of this Order.