TEXTURE SOURCE, INC., Plaintiff,

v.

UNITED STATES of America,
Defendant.

Hutchins Drywall, Inc., Plaintiff,

v.

United States of America, Defendant.

Nos. 2:10–cv–00495–GMN–VCF,
2:10–cv–00497–LRH–VCF.

United States District Court,
D. Nevada.

Feb. 6, 2012.

George P. Kelesis, Bailus Cook & Kelesis, Ltd., Las Vegas, NV, for Plaintiff.

Anne E. Nelson, Lindsay Clayton, Michael G. Pitman, U.S. Department of Justice, Washington, DC, for Defendant.

## ORDER

CAM FERENBACH, United States Magistrate Judge.

This matter is before the court in Case No. 2:10–cv–00495–GMN–VCF on defendant/counterclaimant United States of America's Motion For Protective Order. (# 30). Plaintiff Texture Source, Inc. filed an Opposition (# 31), and the government filed a Reply (# 32). This matter is also before the court in Case No. 2:10–cv–00497–LRH–VCF on defendant/counterclaimant USA's Motion For Protective Order. (# 29). Plaintiff Hutchins Drywall, Inc. filed an Opposition (# 30), and the government filed a Reply (# 31).

In two similar actions in this District (Case No. 2:10–cv–00490–KJD–GWF and Case No. 2:10–cv–00498–LRH–GWF)(hereinafter the "Judge Foley Actions"), the government filed motions for protective orders seeking to protect the same information related to the motions before this court. A combined hearing was held on the motions in the Judge Foley Actions on October 24, 2011. As counsel is the same for all plaintiffs, the legal arguments and discovery sought in the actions before this court and the Judge Foley Actions are identical. The underlying facts in all of the aforementioned actions are substantially similar, and the names, specific monetary amounts, and dates are the only factual differences for purposes of these instant motions.

In the interest of consistent rulings, this court reviewed Judge Foley's orders in preparing this order. Since the parties are familiar with the underlying facts of the actions, the court will not restate them here.

### Motions For Protective Order (# 30 and # 29) [1]

On April 20, 2011, plaintiffs served their first set of requests for production of documents and first interrogatories upon the government. (# 30 and # 29). The discovery requests seek documents and information regarding the Internal Revenue Service's (hereinafter "IRS") purported prior examinations of Centennial Drywall Systems, Inc (hereinafter "Centennial" or "CDSI")(the company that provided drywall workers to plaintiffs for construction projects in Nevada), "including documents prepared, or relied upon, by the [IRS] in connection with one of several, specific purported examinations of Centennial, as well as the [IRS]'s purported efforts to collect taxes from Centennial." *Id.*

In plaintiffs' first supplemental Rule 26(a)(1) disclosures, plaintiffs identified nu-

---

1. All combined references to docket numbers list the docket number in Case No. 2:10–cv–00495–GMN–VCF first, followed by the corresponding docket number in Case No. 2:10–cv–00497–LRH–VCF.

merous individuals that plaintiffs may call as witnesses who, while employed by the IRS, allegedly participated in examinations of plaintiffs and/or Centennial. *Id.* Plaintiffs indicated that they anticipate calling on these witnesses to testify regarding "worker classification determinations" made by the IRS relating to plaintiffs, Centennial, and the "drywall companies." *Id.* The government argues that plaintiffs are essentially trying to "elicit testimony regarding impressions formed and conclusions reached by the [IRS] during the administrative process, and/or the factual and legal analysis employed by the [IRS] in evaluating [p]laintiff[s'] potential liability for the taxes at issue in th[ese] suit[s], to support [their] claims or defense[s]." *Id.*

The government asserts that a protective order is appropriate because "neither the [IRS]'s analysis of the tax liabilities at issue in [these suits], nor the [IRS]'s purported prior examinations of Centennial, are relevant to any party's claim or defense in [these actions]." *Id.* The government also asserts that the protective order is necessary because "details of the [IRS]'s purported prior examinations of Centennial, if any, are protected from disclosure pursuant to 26 U.S.C. § 6103." *Id.* The parties attempted to resolve this issue without the court's involvement pursuant to Local Rule 26–7(b), but were unable to resolve the matter. *Id.*

**A. Discussion**

In support of the motions for protective orders (# 30 and # 29), the government relies on *R.E. Dietz Corp. v. United States,* 939 F.2d 1, 4 (2nd Cir.1991) and other cases regarding the standard which governs the district court's determination in a tax refund action.

*Dietz* states in this regard:

Ordinarily, in an action brought pursuant to 28 U.S.C. § 1346(a)(1) for a re-

fund of taxes already paid to the government, the district court is required to redetermine the entire tax liability. *Lewis v. Reynolds,* 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1932). The factual and legal analysis employed by the Commissioner is of no consequence to the district court. *National Right to Work Legal Def. & Educ. Found. v. United States,* 487 F.Supp. 801, 805 (E.D.N.C.1979); see also *Ruth v. United States,* 823 F.2d 1091, 1094 (7th Cir. 1987) ("courts will not look behind an assessment to evaluate the procedure and evidence used in making the assessment."); *Kentucky Trust Co. v. Glenn,* 217 F.2d 462, 465–66 (6th Cir.1954). "[T]he court does not sit in judgment of the Commissioner; the court places itself in the shoes of the Commissioner." *National Right to Work,* 487 F.Supp. at 805. Thus, a de novo review of the determination and assessment should be conducted. *Ruth,* 823 F.2d at 1094.

Based on this *de novo* review standard, trial courts have prohibited or restricted discovery regarding the IRS's administrative determinations of the tax liability on the grounds that it is irrelevant, except in those cases in which the IRS Commissioner is vested with some discretion in the imposition of a tax. *See Vons Companies, Inc. v. United States,* 51 Fed.Cl. 1, 6 (2001); *McLeod v. United States,* 2000 WL 1902257 *2 (D.Nev.2000) and *Xcel Energy, Inc. v. United States,* 237 F.R.D. 416 (D.Minn.2006).

In *Xcel Energy, Inc. v. United States,* the government disallowed certain corporate interest deductions on life insurance policies that the plaintiff had purchased on behalf of its employees. The plaintiff requested production of documents relating to the government's decision to disallow the deduction. The government produced most of the requested documents, but re-

dacted those portions of the documents that contained the analysis and opinions of the IRS personnel based on lack of relevancy and the deliberative process privilege. In holding that the redacted portions were irrelevant, the court relied on *Mayes v. United States,* 1986 WL 10093 (W.D.Mo.1986) in which the plaintiff sought to discover an internal agency memorandum prepared by an IRS agent during the administrative appeal of the plaintiff's claim. After noting the de novo standard to be applied, the *Mayes* court stated:

> .. The court will not be reviewing the analysis followed by the IRS employee or the reasons why the IRS made the assessment. As the cases cited earlier indicate, it will be of no moment whether the IRS employee was correct or not in his interpretation of the law at the administrative stage. The court's determination of plaintiff's correct tax liability will be made by examining the deduction in question in light of the underlying facts and the applicable law. Given these circumstances, the court concludes that the portion of the supporting statement comprising the IRS employee's legal analysis is not relevant to any of the issues herein and is thus outside the scope of discovery.

*Xcel Energy,* 237 F.R.D. at 419, quoting *Mayes,* 1986 WL 10093 at *2–3.

The plaintiff in *Xcel Energy* argued, however, that the internal memoranda of the IRS agents were relevant because the Internal Revenue Code provides an exception to the imposition of penalties if there is "substantial authority" for the taxpayer's position. *Id.,* 237 F.R.D. at 419, citing 26 U.S.C. § 6662(d)(2)(B)(I) and Treasury Regulation § 1.6620–4(d)(2). In rejecting the argument that the memoranda were relevant on this basis, the court stated that it had "found no authority for the proposi-tion that the internal ruminations of IRS agents, during an administrative consideration of the taxpayer's tax liability, could serve, however slightly, as the "substantial authority" required by Section 6662(d)(2)(B)(I), and Xcel has drawn none to our attention." *Id.*

There are, however, contexts in which such information may be relevant and discoverable. In *United States v. Cathcart,* 2009 WL 482220, *3–4 (N.D.Cal.2009), the government sought the imposition of a penalty against the defendant based on the allegation that he participated in a "90% stock loan program" which constituted an abusive tax shelter or tax fraud scheme. The government was required to prove that defendant knew or should have known that the program was fraudulent. The defendant sought to discover whether the IRS had concluded, in prior audits of other taxpayers, that the same loan program was not an abusive tax shelter. In holding that defendant was entitled to some discovery on this issue, the court stated: "If the IRS concluded that the program was legitimate when it audited borrowers, that may tend to show that a reasonable person in defendant's position would believe that the program was not an abusive tax shelter." *Id.* at *5.

■ As a general rule, a taxpayer's reliance on an erroneous IRS administrative ruling is no defense to the payment of a lawful tax. *See Vons Companies, Inc. v. United States,* 51 Fed.Cl. 1, 6–7 (2001), citing *Dixon v. United States,* 381 U.S. 68, 72–73, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965). The "safe haven" provision of § 530 of the Revenue Act of 1978, however, provides an exception to this rule as it relates to the employment status of individuals for whom employment taxes may be owed.

Section 530(a)(1) states as follows:

> If—

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and

(B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee,

then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

Section 530(a)(2) sets forth statutory standards "providing one method of satisfying the requirements of paragraph (1)." It states:

For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:

(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

(B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

Section 530 "was designed to relieve employers of the burden of surprise or uncertain imposition of retroactive tax liability resulting from an increase in IRS employment-status audits." *General Investment Corp. v. United States*, 823 F.2d 337, 339 (9th Cir.1987).[2] The statute is to be liberally construed in favor of the taxpayer, although the taxpayer has the burden of establishing that he meets the requirements of § 530 by a preponderance of the evidence. *Springfield v. United States*, 88 F.3d 750, 753 (9th Cir.1996). In addition to the matters listed in § 530(a)(2)(A),(B) and (c), "a taxpayer may demonstrate any other reasonable basis for the treatment of an employee for tax purposes." *Id. See also General Investment Corp.*, 823 F.2d at 340 ("Section 530(a)(2)(c) is but one way for an employer to prove it had a 'reasonable basis' for not treating its workers as employees for tax purposes.").

In support of the relevancy of their discovery requests, plaintiffs state that "to demonstrate, in part, [their] entitlement to relief under Section 530 [plaintiffs] will present evidence that there was a recog-

**2.** As stated in *Springfield v. United States*, 88 F.3d 750, 751 n. 2 (9th Cir.1996):

Section 530 of the Revenue Act of 1978, Pub.L. No. 95–600, 92 Stat. 2763, 2885–86, was originally intended to provide interim relief for taxpayers who were involved in employment tax controversies with the IRS, and it therefore initially applied only to periods prior to January 1, 1980. H.R.Rep.

No. 1748, 95th Cong., 2d Sess. 4 (1978), *reprinted in* 1978–3 C.B. 629, 632. It was temporarily extended twice and then extended indefinitely by Section 269 of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, 96 Stat. 324, 552. Section 530 was never codified, but it is reproduced in the notes following I.R.C. § 3401 [26 U.S.C. § 3401].

nized industry practice wherein *Centennial's workers were independent contractors* and the status of Centennial's workers as independent contractors was *accepted by the IRS* (as well as being an accepted practice in the local drywall industry). [Plaintiffs] appropriately believed [they] did not have to pay taxes for Centennial's workers since no other subcontractor was." (# 31 and # 30).

■ Subsection 530(a)(2)(c) requires the taxpayer to prove two elements. First, the taxpayer must prove that there was, in fact, a long-standing recognized practice in a significant segment of the industry. Second, the taxpayer must prove that he relied on this practice in the tax treatment of his or her workers. The court in *General Investment Corp.* held that the plaintiff satisfied its burden by presenting testimony by its principal officer and another mine operator that mining companies in the county treated their mine workers as independent contractors. 823 F.2d at 340–41. In *Springfield,* the plaintiff met his burden by presenting undisputed testimony by himself and by salesmen that independent used car dealers in the county treated their salesmen as independent contractors. 88 F.3d at 753–54. *See also 303 West 42nd St. Enterprises, Inc. v. Internal Revenue Service,* 181 F.3d 272, 277 (2nd Cir.1999) (holding that taxpayer's survey of its particular industry regarding the tax treatment of the same type of worker may be sufficient to establish the practice of a significant segment of the industry). Statements made by IRS officers or employees to business operators/taxpayers recognizing the existence of the practice in the industry are also relevant and may be admissible to prove the existence of the practice. The Government is therefore not entitled to a protective order in regard to discovery of any such statements.

The taxpayer can also establish reasonable reliance based on judicial precedent, published rulings, technical advice with respect to the taxpayer, a letter ruling to the taxpayer or a past IRS audit that resulted in a finding or inference that similarly situated workers were not employees for tax purposes. § 530(a)(2)(A) and (B).

The IRS apparently did not issue any technical advice memoranda or private letter rulings to plaintiffs stating that it was proper for them to treat the drywall workers as independent contractors. Nor did the IRS conduct any prior audits of plaintiffs relating to the tax treatment of such workers. Plaintiffs allege, however, that they relied on representations made to them by CDSI that the IRS had approved CDSI's treatment of the drywall workers as independent contractors and that it was proper for the plaintiffs to also treat such workers as independent contractors so long as the same conditions relating to control over the workers were present. In support of this argument, plaintiffs cite a September 6, 1989 letter that an IRS officer sent to the president of CDSI, which stated as follows:

> Per our discussion relating to the employment tax examination just completed, as long as the same independent contractor conditions exist, there is no employment tax issue.
>
> The independent subbing to you is:
>> at risk (can lose cash out of pocket on a particular job), completing work on a per job basis rather than by the hour, not required by you to perform personally, and control of work rests with sub (outside general requirements)
>
> I would like you to pass on some information to your subs if you would be so kind. If the so called subs to your subs are not operating under the same conditions as I mentioned briefly

above, those workers are employees and your subs are employers subject to employment taxes.

(# 31 and # 30), Exhibit 1.

Plaintiffs also cited a purported January 4, 2007 letter from an IRS Revenue Office Examiner.[3] The document concerns an examination as to whether a corporate vice-president of CDSI, who consulted on real estate development matters, was an independent contractor. Although the document does not directly concern the employment status of drywall workers, item 10 at the bottom of the page states:

Due to a previous employment tax examination, the taxpayer is afforded a Section 530 safe harbor for the drywaller class of employee. The taxpayer has never been examined for independent real estate development class of worker.

Plaintiffs argue that this document confirms that as recently as the end of 2006, the IRS recognized CDSI's right, pursuant to § 530, to treat the drywall workers as independent contractors.

 Section 530(a)(2) does not provide any express authority for a taxpayer to rely on IRS technical memoranda or private letter rulings issued to other taxpayers. In these actions, however, the plaintiffs contracted with CDSI to provide drywall workers for their construction projects and allegedly relied on its representations that the IRS had approved or confirmed the independent contractor status of the workers. The Court could therefore find, pursuant to § 530, that it was reasonable for plaintiffs to rely on CDSI's representations so long as CDSI had a reasonable basis for making such representations. Technical advice memoranda

or private letter rulings issued to CDSI which approved or confirmed the independent contractor status of the workers would provide evidence supporting the reasonableness of CDSI's belief and representations. Likewise, prior IRS audits of CDSI which resulted in no assessments being made based on a finding that the workers were employees could also support the reasonableness of CDSI's belief and representations. Discovery regarding such matters is therefore relevant. On the other hand, the internal memoranda of IRS agents containing their analysis regarding the employment status of the drywall workers is irrelevant so long as the memoranda and/or their contents were not disclosed to CDSI or plaintiffs. If the memoranda discuss communications between the IRS and CDSI (or plaintiffs) regarding the employment status of the workers, however, information regarding such communications are relevant and discoverable.

 The Government also argues that pursuant to 26 U.S.C. § 6103(a) it is prohibited from disclosing any return or return information concerning a non-party taxpayer, in these actions CDSI. (# 30 and # 29). As the Government notes, however, § 6103 contains several exceptions, including an exception which permits disclosure to a person authorized by the taxpayer to receive such information. CDSI is a defunct corporation. Plaintiffs have attached to their response an authorization by CDSI's former president, Edwin Braithwaite, authorizing the release of return information to plaintiffs for purposes of this lawsuit. The Government appears to accept, or at least does not strenuously dispute, the validity of this authorization pursuant to 26 U.S.C.

---

**3.** Nothing on the face of the document confirms that it was a letter from an IRS officer. The Government, however, has not disputed

Plaintiffs' representation regarding the exhibit.

§ 6103(e)(1)(D). Section 6103(h)(4)(c) also provides that return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer, and which directly affects the resolution of an issue in the proceeding. In these actions, return information relating to the employment tax treatment of CDSI's drywall workers appears to directly relate to the tax treatment of those workers by plaintiffs arising out of the contractual relationship between CDSI and plaintiffs. It therefore also directly relates to the resolution of the tax issue in these actions. Section 6103(a) therefore does not preclude the discovery of relevant return information relating to the tax treatment of CDSI's drywall workers.

### B. Conclusion

Based on the foregoing, the Court concludes that discovery into the internal analysis, impressions or conclusions of IRS employees or officers relating to plaintiffs' or CDSI's potential liability for the employment taxes at issue is irrelevant. The Government is therefore entitled to a protective order against plaintiffs' efforts to discover such information, whether it be through depositions of IRS personnel, interrogatories or requests for production. Plaintiffs are not precluded, however, from discovering statements made by the IRS to CDSI and/or plaintiffs regarding the employment status of the drywall workers, regardless of whether such statements were made in the form of technical advice memoranda, private letter rulings or other forms of communication. Plaintiffs are also not precluded from discovering relevant information regarding prior IRS audits of CDSI which resulted in determinations relevant to the drywall workers' status as independent contractors or employees, and upon which CDSI may have relied in allegedly representing to plaintiffs that the workers were independent contractors.

Accordingly, and for good cause shown,

IT IS ORDERED that Defendant/Counterclaimant United States' Motion for Protective Order (# 30) in Case No. 2:10–cv–00495–GMN–VCF and Motion for Protective Order (# 29) in Case No. 2:10–cv–00497–LRH–VCF are GRANTED in accordance with and subject to the limitations set forth in this order.